The State *v.* Becton.

## THE STATE *v.* ED. BECTON *et al.*

1. CRIMINAL LAW. *Robbery. Evidence.* Where a witness, upon the question of the defendant's identity, in order to make his recognition of him more explicit, details facts and circumstances under which he saw defendant, calculated to prove a separate substantive felony from the one charged in the indictment, such evidence is competent, the answer being brought out by defendant's counsel on cross-examination.

2. SAME. *Practice. Charge of court.* It is not always error, under the act of 1873, concerning written charges, for the court, in ruling on questions of evidence during the trial, to state verbally to the jury qualifications of such testimony and his reasons.

3. SAME. *Commute capital offenses to imprisonment.* Sec. 5257, providing that the punishment for capital offenses may be commuted, applies as well to crimes made capital offenses after the act as before. In other words, that this finding, involving the life of the defendant, should not be left to the whim, caprice or prejudices of a jury, but should be based on the facts of the case; and the principles on which this finding should be based ought to be explained to the jury, so that they might act intelligently in the performance of the duty imposed by the statute, of settling the question whether the death penalty should be inflicted, or whether the circumstances and facts of the case, in view of the spirit of the law, demanded a less severe punishment, and the jury must be held to be limited by the provisions of the statute to the commutation therein expressed; but while this is the duty of the court, such failure so to charge cannot be assigned as error, when the prisoner's counsel has failed to request an additional charge.

Code cited: Secs. 5257, 5259.

### FROM SHELBY.

Appeal from the Criminal Court. JNO. R. FLIPPIN, Judge.

ATTORNEY-GENERAL HEISKELL for the State.

The State *v.* Becton.

Moss & Jones for defendant.

Freeman, J., delivered the opinion of the court.

Defendants were indicted and convicted in the Criminal Court of Memphis for the offense of robbing from the persom. The jury returned a verdict simply of guilty as charged, and the Judge proceeded to pronounce sentence of death, from which there is an appeal to this court.

The sentence and finding on which it is based is under the act of 1865, ch. 5, sec. 6, providing that "whoever shall feloniously rob another, or steal from his person, shall, on conviction thereof, suffer death by hanging: *provided,* the jury before whom the offender is tried and convicted may, if they think proper, commute the punishment to imprisonment in the penitentiary for a period of not less than ten nor more than twenty-one years."

The substantial facts of the case are as follows, from the statements of McBride, the party robbed: On Christmas morning, between 7 and 8 o'clock, as he was on his way to the city of Memphis, about half a mile from where he had crossed Wolf River ferry, and not more than perhaps a mile from the limits of the city, probably he met defendants, with three other parties. Two of the parties were armed with guns, one having a double-barrel shot-gun. One of the party said halt, as witness rode up, and asked if he had any money. He replied, very little. The parties crowded up around him in a boisterous manner, evidently being under the influence of liquor, and

"on a Christmas drunk," it being Christmas day. One of them caught witness by the collar and choked him, and another held a gun, cocked, to his head, while another took his pocket-book, containing money to the amount of one dollar and forty cents in fractional currency. Becton, one of the defendants, remarked, while holding the gun pointed at witness's head, "I believe I will shoot him anyhow," and as witness started off, leveled his gun at him. Some of the party knocked the gun up, saying, "don't shoot him, we have got his money," the gun going off when knocked up, but doing no injury. Lewis, the other defendant, struck the party with a brick, perhaps as he started off. McBride then went on to the city, found the sheriff, returned to Chelsea, or north Memphis, near where the robbery took place, found the defendants in a drunken, riotous crowd, and arrested them.

Several errors are assigned, which we proceed to notice so far as they present any matters deemed material to the decision of the case.

First, it is alleged there was error in admitting certain testimony of one Groves, and in remarks made by the court to the jury on the question of excluding or permitting the same to go to them for consideration. Groves proved on examination, in chief, that he knew defendants, and met them not far from the place of the robbery that morning; that when he saw them they were engaged in a quarrel with another man unknown to him. On cross-examination, in answer to questions of defendant's counsel in an effort to show

The State *v.* Becton.

he was mistaken as to identity of prisoners, he said he was certain it was Becton and Lewis, as he had known them for several years, and then adds: "When I saw them quarreling with the strange man, I rode up and told Becton, who had his gun drawn on him, to let him alone and not hurt him." Defendants' counsel then asked the court to exclude from the jury what the witness had said in regard to the defendants having another difficulty with other parties, which the court refused to do, but went on to explain to the jury the purpose of admitting the testimony, and on what view it was competent.

As to the competency of the testimony objected to, we cannot see clearly that it was incompetent, as it did not show the existence of another crime, tending to lead to the conclusion that the defendants were guilty of the one with which they were charged, but only the circumstances under which the party saw them, and the facts that called his attention specially to them, and thus were legitimate on the question of his accuracy in asserting the identity of the defendants. It is not even shown that the act was criminal. It might have been innocent, as in self-defense, or it might have been, so far as we can see from what is before us, without any purpose to injure. However, be that as it may, the facts were brought out by defendants' counsel on cross-examination, and being thus presented by themselves, cannot be objected to or assigned as error. This is on the well-settled rule that a party cannot be permitted to ask a question, taking the chance of getting an answer for his

benefit, and when he finds it against him, object to the matter thus brought out. He cannot thus experiment with a court. It is true, if it appeared that the question put to the witness had not tended to bring out the objectionable facts, and the witness's answer had not been a response to the question put, then the rule would not apply. But nothing of this kind appears, nor is the request for exclusion of the testimony based on such ground. There was no error, then in admitting this testimony, or in refusing to withdraw it from the jury.

But the court, in ruling on this question, went on to say to the jury that "what witness had said could not, and should not, be looked to by them for the purpose of showing the prisoners guilty of the crime for which they were on trial, nor any bearing whatever that way, but the fact of Groves having seen them under the circumstances testified to might be looked to as showing the opportunity of witness to see them, and that it was not a mere casual glance, but a fixed and attentive scrutiny, and for no other purpose whatever; that, as a general rule of law applying to this case, a person cannot be proven guilty of one crime by showing he had committed another." It is now assigned as error, that this was in violation of the act of 1873, as being a verbal charge to the jury.

We have not been able to assent to this view of the question in this case. While we do not say there might not be a case where verbal instructions, given to a jury during the trial, would not be a vio-

lation of the spirit of the statute, and cause for reversal, yet we do not think this such a case. The testimony was brought out by counsel of the defendants, and as such, competent to be considered by the jury. The fact that the Judge limited its application for the benefit of the defendants, and stated the ground and purposes for which it was admissible, cannot be held such error as should reverse a case. This would be to trammel the free discussion of grounds of admission of testimony as between the counsel and court, preventing a statement of the reasons for the action of the court to an extent unwarrantable and unnecessary. On such a question the Judge may well state the grounds on which he deems the testimony competent, and the purposes for which it is admitted, and thus give counsel the means of combating his conclusion, either then or in argument of the case, and asking the exclusion of the objectionable testimony before the jury retires, or in the charge of the Judge to them. We do not think this error.

The only other question which we deem proper to notice is, that the Judge failed to instruct the jury that they might commute the punishment to imprisonment for life, this being a capital case. Sec. 5257 of the Code provides: "The court may also, when any person is convicted of a capital offense, and the jury who convicted him state in their verdict that they are of the opinion that there are mitigating circumstances in the case, commute the punishment from death to imprisonment for life in the penitentiary." We think it beyond question that if there is nothing

in the act of 1865, under which this conviction is had, which contravenes this section, it must apply to this case, as its language is general and applies to all capital cases of which a party may be convicted, and cannot be held to apply only to such offenses as were then capital.    The ·reason and policy of the enactment is equally applicable to capital cases, whether so at the time or made so by subsequent enactment. The principle on which the provision rests is, that there may be in the same offense circumstances of more or less aggravation or mitigation, which would forbid the death penalty, and yet demand a very high degree of punishment.    In all such cases the jury should be instructed by the court as to their discretion, or, rather, their duty, and, in addition, should be instructed by the court that they should look into the facts of the case, and see if such circumstances as indicated appeared, and if so, should find them, and so return their verdict.    In other words, that this finding, involving the life of the defendant, should not be left to the whim, caprice or prejudices of a jury, but should be based on the facts of the case, and the principles on which this finding should be based ought to be explained to the jury, so that they might act intelligently in the performance of the duty imposed by the statute, of settling the question whether the death penalty should be inflicted, or whether the circumstances and facts of the case, in view of the spirit of the law, demanded a less severe punishment.

The question, then, is presented, does the act of 1865, by its terms, and fair construction, exclude the

operation of this general provision of law as to capital cases.     We think it does.     The general or first clause provides that the person convicted shall suffer death by hanging; the proviso is for commutation, if the jury think proper, to confinement in the penitentiary for a specified period, to-wit: from ten to twenty-one years.     The Legislature has, in express terms, fixed the penalty in cases where the jury deem it proper to commute the punishment—in plain language has said, the jury must either hang or confine in the penitentiary for the period specified.     If it had been intended to allow other variations from the rule prescribed, it would have been easy to ·have added the proper terms to express the purpose.     The expression of the one thing in clear terms must be held to exclude the other.     The jury, then, must be held to be limited by the provisions of the statute to the commutation therein expressed.

We deem it proper to say, that in view of the very severe penalty imposed by this act of 1865 for the offense under consideration, and also, in the same act, for stealing a horse, mule or ass, and from a fair construction of the purpose of the Legislature in thus making the penalties so severe, it is the duty of the judges to carefully instruct juries as to this duty in respect to commuting the punishment to be inflicted.     It was the purpose of these statutes to inflict the death penalty, it is true, for the offense; but it is equally the purpose that, in a proper case, the jury may, or rather shall, commute to the less severe penalty prescribed.     The infliction of the death penalty,

10—VOL. 7.

or of the lesser one, should depend upon the aggravated character of the offense in the one case, or on circumstances of less aggravation in the other, and certainly cannot be held to depend upon the caprice, passion or prejudices of a jury, without regard to the facts which may render it proper to inflict the one penalty or the other.     The jury should in every case be instructed as to the elements proper to be considered in deciding upon this question, without, however, in any way limiting their discretion in the matter— only giving the proper basis on which it should be exercised.

The Judge in this case failed to perform this duty. But can this be assigned as error, no request to charge further having been made?

The act of 1873, providing for the delivery of charges in criminal cases in writing, by sec. 3 provides: "If the attorneys on either side desire further instructions given the jury, they shall write precisely what they desire the Judge to say further.     In such case the Judge shall reduce his decision on the proposition to writing, and also read the same to the jury, without one word of oral comment, it being intended to prohibit judges wholly from making oral statements to juries in any case involving the liberties and lives of citizens."

We have held the first part of the statute to be imperative on the judge, and failure to comply, without express waiver, a ground for reversal.     We do not see how we can avoid holding this section to be equally imperative, and that a judge will not be in

The State *v.* Becton.

error in failing to give further instructions than those given in writing, when no request is made in compliance with the express mandate of the statute.

The language of each section is equally the mandate of the legislative body—the supreme law-making power in the State. Within the scope of the constitutional powers of that body, it may prescribe whatever rule is deemed best. All, whether citizens, officials or courts, must bow to the mandate.

In support of this view, we may add, that if proper instructions were asked for verbally, and not as prescribed by the statute, the judge, by the terms of the law, would not be bound to give them, for he is only required to "reduce his decision on the proposition to writing, and give it to the jury, when precisely what is required is written out and presented to him for such decision." If this be true, then much less will he be in error for failure to charge when no request, either written or verbal, is presented.

This is conclusive of this case, as the other questions presented in argument have nothing in them. The result is, that the judgment must be affirmed.

In view of the facts of this case and the extreme severity of the penalty, we think it a proper case in which to recommend the parties to the Governor for commutation of their sentence from death to imprisonment for life, in accordance with the provisions of sec. 5259 of the Code.