**Ex parte Karla Faye TUCKER.**

**Writ No. 21159-03.**

Court of Criminal Appeals of Texas,
En Banc.

Jan. 28, 1998.

George McCall Secrest, Jr., Houston, David L. Botsford, Walter C. Long, Austin, for appellant.

Shirley Cornelius, Asst. Dist. Atty., Houston, Matthew Paul, State's Atty., Austin, for State.

## ORDER

PER CURIAM.

This is a subsequent application for writ of habeas corpus filed pursuant to the provisions of Art. 11.071, Sec. 5, V.A.C.C.P.

On April 19, 1984, applicant was convicted of the offense of capital murder. After the jury returned affirmative answers to the special issues, punishment was assessed at death. This Court affirmed applicant's conviction on direct appeal. *Tucker v. State*, 771 S.W.2d 523 (Tex.Cr.App.1988). The trial court has scheduled applicant's execution to take place on February 3, 1998.

In the instant cause, applicant presents nine allegations. We have reviewed the application and find it fails to satisfy the requirements of Art. 11.071, Sec. 5, V.A.C.C.P., and accordingly dismiss the application as an abuse of the writ. We also deny applicant's request for a stay of execution.

1. Assuming applicant's successive habeas corpus application meets one of the exceptions contained in Article 11.071, Section 5, her application nevertheless presents no legal basis upon which to grant habeas corpus relief. Therefore, it would not, as the dissenting opinion claims, be

MEYERS, J., joins with note. I write to point out that even if applicant met one of the exceptions provided for in Sec. 5 of Article 11.071, her claims are not cognizable. Applicant claims the clemency/commutation procedures provided for in this state are so inadequate as to violate her due process rights. But there are no constitutional rights pertaining to clemency. Clemency proceedings do not create a liberty interest and thus federal due process rights are not implicated. *Connecticut Bd. of Pardons and Paroles v. Dumschat*, 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981).

With these observations, I join the court's dismissal of applicant's petition.

McCORMICK, Presiding Judge, concurring.

I agree that our duty is to dismiss applicant's successive habeas corpus application as mandated by our Legislature in Article 11.071, Section 5, V.A.C.C.P.[1] Assuming Article 11.071 would authorize this Court to address the merits of applicant's successive habeas corpus application, our state law as well as federal constitutional precedents would answer the dissenting opinion's contention that a "death row inmate has a due process right to meaningful consideration of a commutation request in the clemency process."

Our state law is clear and well-settled. "Clemency powers embodied in the parole system are beyond the reach of interference by the judicial branch," and any judicial action that interferes with the exercise of that power by the executive branch "is as much of an unconstitutional interference as is an attempted usurpation of that power." *Sanders v. State*, 580 S.W.2d 349, 352 (Tex.Cr.App. 1979). Clemency decisions are not the business of the courts; they belong solely to the executive branch.

The dissenting opinion's reliance on *Ex parte Patterson* about some "entitlement

necessary to "remand this matter to the habeas court to conduct a hearing to determine whether the procedures and policies in the clemency process, if any, comport with the requirements of due process and due course of law."

doctrine of an inmate's liberty interest" under Texas' due course of law constitutional provision is misplaced and does not apply to this case. See *Ex parte Patterson*, 740 S.W.2d 766, 767–75 (Tex.Cr.App.1987) (holding that State's failure to notify defendant of intent to seek deadly weapon finding precluded trial court from authorizing jury to answer special issue regarding defendant's use of deadly weapon). *Patterson* deals with an inmate's "liberty interest" in such things as good time credits that affect his eligibility for parole. See *Patterson*, 740 S.W.2d at 769.

This case deals with whether a lawfully convicted and sentenced death row inmate has any kind of a "liberty interest" in executive clemency. Under our state law, this inmate has no such "liberty interest" as the decision whether to grant clemency is and has been solely within the unfettered discretion of the executive branch. There is no tradition or practice in this state's history that recognizes any kind of fundamental right to executive clemency. Cf. *Washington v. Glucksberg*, 521 U.S. ——, —— – ——, 117 S.Ct. 2258, 2267–68, 138 L.Ed.2d 772, 787–88 (1997) (setting guideposts for "responsible decision-making" in "substantive due process cases"). Since there is no underlying "liberty interest" or fundamental right to executive clemency, there are no minimum due course of law procedures due relating to the executive branch's decision to grant clemency. Cf. *Meachum v. Fano*, 427 U.S. 215, 225–26, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 556–58, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974).[2] Therefore, applicant and the dissenting opinion must demonstrate that our state law and the manner in which executive clemency decisions are made in Texas violate federal due process principles.

The foregoing discussion as well as the United States Supreme Court's decision in *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981), answer the federal due process arguments adversely to the positions taken by applicant and the dissenting opinion. An inmate has " 'no constitutional or inherent' " right to commutation of her sentence. *Dumschat*, 452 U.S. at 464, 101 S.Ct. at 2464. And, a state law which, like Texas', confers "unfettered discretion" in granting executive clemency does not create such a right. See *Dumschat*, 452 U.S. at 465–67, 101 S.Ct. at 2465 (the intermediate appellate court correctly recognized that Connecticut has conferred " 'unfettered discretion' " on its Board, but paradoxically then proceeded to fetter the Board with a halter of constitutional "entitlement"). Therefore, no minimum federal due process procedures apply to the manner in which executive clemency decisions are made in Texas. See *Dumschat*, 452 U.S. at 463–65, 101 S.Ct. at 2464.

With these comments, I concur in dismissing this habeas corpus application.

MANSFIELD, KELLER, PRICE and HOLLAND, JJ., join this concurrence.

OVERSTREET, Judge, concurring.

I concur with the Court's order dismissing applicant's application for habeas corpus relief. I write separately to comment further.

Applicant's complaints about the inadequacies of our Texas executive clemency procedures are not unheard of. Not only are they not unheard of, but her complaints are pretty much accurate. I would say that clemency law in Texas is a legal fiction at best. In recent years, we have likewise heard similar complaints, with much clamor, in cases involving Gary Graham and Leonel Torres Herrera. See *State ex rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 389 (Tex.Cr. App.1994) and *Ex parte Herrera*, 860 S.W.2d 106 (Tex.Cr.App.1993). However, those clemency procedures remain the same.

It is, and has been, apparent to all that the clemency process has some real problems—

---

2. The dissenting opinion suggests that our state law providing for executive clemency somehow creates a protected "liberty interest" or "fundamental right" to executive clemency sufficient to trigger procedures essential to the realization of that right. However, this argument fails to appreciate that our state law provides unfettered discretion in the exercise of executive clemency.

no standards or definitive factors or criteria to consider, and nothing to ensure uniformity and consistency in consideration. Yet these procedures remain the same.

It is within the Legislature's prerogative to enact laws to correct some of these problems. Yet it has chosen not to do so. Thus the people of Texas, acting through the elected Legislature, must be satisfied with the current clemency process, or lack thereof. It is not the prerogative of this Court to by judicial fiat alter what in Texas is called the clemency process.

The executive clemency process is a vehicle for mercy. Applicant's application presents a great deal of information suggesting and arguing that she is entitled to such mercy. However, applicant does not have a constitutional right to mercy. "[A]n inmate has 'no constitutional or inherent right' to commutation of his [or her] sentence." *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158, 166 (1981).

Accordingly, I concur with the Court's order dismissing applicant's current application. If the people of Texas want the clemency process changed, they must let the Legislature know that they demand such change.

BAIRD, Judge, dissenting.

This habeas application presents a question of first impression, namely: whether a death row inmate has a due process right to meaningful consideration of a commutation request in the clemency process. For the following reasons, I believe the question should be answered in the affirmative.

I.

In its finality, death is different from any other punishment.[1] Because of the gravity of capital punishment, Texas has both constitutional and statutory provisions for clemency.[2] Tex. Const., art. IV, § 11; Tex.Code Crim. Proc. Ann. art. 48.01; Tex. Admin. Code, Title 37, Chapter 143 et. seq. (Executive Clemency; Reprieve of Execution). Under the present clemency scheme, the Board of Pardons and Paroles (hereafter, the Board) has the authority to either conduct a hearing or summarily recommend or deny commutation. 37 TAC § 143.43. Upon the Board's recommendation, the Governor may commute a death sentence to life imprisonment. Tex. Const. art. IV, § 11; 37 TAC § 143.41(b).

Even though procedures are in place to request commutation, applicant asserts the clemency process, as applied, does not provide meaningful consideration of such a request. In support of her argument, applicant has supplemented her application with the 1997 records of the Board. Of the 37 inmates executed in 1997, 16 sought commutation and requested a clemency hearing. Yet no hearings were held and no board member voted for commutation in any case.[3] And despite the Constitutional mandate that

1. As the Supreme Court held in *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976): "... the penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100–year prison term differs from one of only a year or two."

2. Clemency is the act of considering mercy or leniency; commutation is the reduction of sentence, for example, reducing a death sentence to a life sentence.

3. According to applicant, since *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Board has held only one live clemency hearing. Application/petition for post conviction writ of habeas corpus, pg. 57.

Additionally, applicant has provided an affidavit from Debbie Crosby, sister of David Stoker, who was executed in June 1997 after his commutation request was denied. Crosby called members of the Board and states the following:
... After I learned of the denial of my brother's commutation request, I attempted to call the board members to learn of their reasons for denying commutation. I was only able to reach two of the eighteen board members: Charles Shipman of Abilene and Thomas Moss of Amarillo. As I recall, I had a lengthy conversation with Shipman (about eight minutes), who told me that he did not read my brother's commutation request, and gave me the sense

the Board "keep records of its actions and the reason for its actions," Tex. Const. art. IV, § 11(a), applicant contends the Board keeps no such records.[4] Consequently, applicant fears there will be no meaningful consideration of her commutation request because the "board has no guidelines stipulating the factors that must be used in reviewing clemency requests" and "each member decides individually on what basis to recommend or deny action." (Stephanie Asin and Kathy Walt, *Execution of Tucker Scheduled for Feb. 3*, Houston Chronicle, December 19, 1997, at A1).

## II.

Since our Constitution and statutes provide for clemency, there must be, at the very least, a modicum of due process. The United States Constitution guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. This constitutional guarantee applies to the inmate population. Therefore, inmates "may not be deprived of life, liberty, or property without due process of law" subject though they may be "to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974). In *Ex parte Patterson*, 740 S.W.2d 766 (Tex.Cr.App.1987),[5] this Court adopted the entitlement doctrine of an inmate's liberty interest which Justice Stevens expressed in his dissent in *Meachum v. Fano*, 427 U.S.

215, 230, 96 S.Ct. 2532, 2541, 49 L.Ed.2d 451 (1976):

... neither the Bill of Rights nor the laws of sovereign States create the liberty which the Due Process Clause protects. The relevant constitutional provisions are limitations on the power of the sovereign to infringe on the liberty of the citizen. The relevant state laws either create property rights, or they curtail the freedom of the citizen who must live in an ordered society. Of course, law is essential to the exercise and enjoyment of individual liberty in a complex society. But it is not the source of liberty, and surely not the exclusive source.

I had thought it self-evident that all men were endowed by their Creator with liberty as one of the cardinal unalienable rights. It is that basic freedom which the Due Process Clause protects, rather than the particular rights or privileges conferred by specific laws or regulations.

*Patterson*, 740 S.W.2d at 771. In light of that liberty interest, the role of the State to extend and enforce the guarantees of due process is inherent and "[o]nce the State established the baseline of how it customarily treats the prison population, whether by statute, administrative rule, or simply unwritten policy or practice, any substantial deviation from that line in a particular case will impact a liberty interest." *Patterson*, 740 S.W.2d at 772 (internal quotations and citations omitted).

that he generally did not read the commutation requests. He said he did not put a lot of stock into reading about the capital cases. He said he did not see any reason to give these cases further review, because they had gone through the court appellate process.

4. The Texas Constitution mandates the Board of Pardons and Paroles "keep records of its actions and the reason for its actions." Tex. Const. art. IV, § 11(a).

Regarding the workload of the Board, applicant submits the following:

According to statistics published by the Texas Sunset Commission in its 1996 report, each of the eighteen board members votes in an average of 14,900 non-death penalty cases, as follows: Consideration of parole (8,400), Revo-

cation of parole (4,300), Conditions of mandatory supervision (2,200). Averaging 40 hours a week for 50 weeks, this meant that each board member voted on 7.45 cases per hour, or one every eight minutes. Bill Habern, in his article in the 1997 Advanced Criminal Law Course, estimated an average of one vote every 5.13 minutes. *Id.* at Chapter Z–5. Of course, the board members have far more duties than just voting.

5. Overruled on other grounds by *Ex parte Beck*, 769 S.W.2d 525 (Tex.Cr.App.1989), where the Court held the indictment provided sufficient notice that the use of a deadly weapon would be a fact issue.

In *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 465, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981), the Supreme Court held that the liberty interest in clemency review as a ground for a constitutional claim "must be found in statutes or other rules defining the obligations of the authority charged with exercising clemency." In our clemency scheme:

> The Executive Department is constitutionally required to adopt and follow rules that comport with due process and due course of law. Now that the Supreme Court of the United States has spoken in *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), concerning the role of the executive clemency in providing a forum for testing claims of "actual innocence," *this Court has the power, duty and responsibility to assure that due process and due course requirements are met.* (Emphasis added.)

*Ex parte Graham*, 853 S.W.2d 565, 570 (Tex. Cr.App.1993) (Clinton, J. concurring).[6]

Because clemency provides the "fail safe" in our criminal justice system, *Herrera v. Collins*, 506 U.S. at 414–15, 113 S.Ct. at 867–68, our clemency process must provide meaningful consideration of a commutation request. Therefore, even though the power of commutation is vested in the Executive Branch, this Court has an appropriate and important role to ensure the clemency process comports with due process and due course of law. U.S. Const. amend. XIV; and, Tex. Const. art I, § 19.

### III.

Since the reinstatement of capital punishment in 1972, Texas has executed 144 inmates but not a single death sentence has been commuted solely by request of the condemned. Presently 444 inmates await their execution. If those inmates are constitutionally guaranteed the right to seek commutation, due process commands they know what criteria is examined in the clemency process, otherwise there can be no meaningful consideration of their commutation requests.[7]

The instant application raises questions sufficient to warrant further review. Therefore, I would stay applicant's imminent execution and remand this matter to the habeas court to conduct a hearing to determine whether the procedures and policies in the clemency process, if any, comport with the requirements of due process and due course of law. Because the majority does not, I dissent.

---

**6.** The Texas Constitution does not limit the clemency process to claims of actual innocence. Tex. Const. art. IV, § 11.

**7.** This does not seem too much to ask for in a process that is constitutionally guaranteed and statutorily mandated. Indeed, it is this guarantee and this mandate that impose upon us the duty to ensure that commutation requests are meaningfully considered. Is it wrong for the judiciary to insist that such a process be more than a pretext or sham?

The concurring judges seem to either readily embrace or bemoan the proposition that the clemency process, as inadequate as it may be, is beyond the reach of the judiciary. Would the concurring judges be so sanguine if the Board implemented policies that denied commutation to all African–Americans, or to all women, or to all Catholics? Would the judges of this Court be willing to turn a blind eye to such invidious discrimination? The people of Texas would expect this Court to do more than sit on its hands. Similarly, the people of Texas deserve a Court willing to ensure that a condemned inmate's Constitutional right to seek commutation is meaningful.