**Philip WORKMAN, Respondent,**

v.

**STATE of Tennessee, Movant.**

Supreme Court of Tennessee,
at Jackson.

Jan. 3, 2000.

Paul G. Summers, Atty. Gen. and Reporter, Joseph P. Whalen, Asst. Atty. Gen., Nashville, for Appellant.

Donald E. Dawson, Post–Conviction Defender, Nashville, for Appellee.

## ORDER

This cause came on to be heard upon the motion of the State of Tennessee requesting that an execution date be set in the above-styled case.

The respondent, Philip Workman, filed a "Response to Motion to Set Execution Date and Motion for Certificate of Commutation," alleging that he was convicted upon perjured testimony and that he is not guilty of capital murder. The State filed a reply and response, arguing that the respondent is not entitled to further delay in the imposition of his sentence of death and that his case is not an appropriate one for

this Court to consider issuance of a certificate of commutation.

■ Under the Tennessee Constitution, the power to commute a death sentence is vested in the Governor. Tenn. Const. Art. III, § 6. In addition, the Tennessee General Assembly has passed enabling legislation providing the Governor with several options for granting clemency. Tennessee Code Annotated Section 40–27–101 confers upon the Governor the general "power to grant reprieves, commutations and pardons in all criminal cases after conviction, except impeachment." Section 40–27–104 grants the Governor the discretion to remit a portion of a prisoner's sentence upon the recommendation of the board of probation and parole. Two statutes speak directly to the issue of commutation of death sentences. Pursuant to Tenn.Code Ann. § 40–27–105, upon application for a pardon by a person sentenced to death, the Governor may commute the sentence to life imprisonment if he or she "is of [the] opinion that the facts and circumstances adduced are not sufficient to warrant a total pardon." This Court has no role in clemency proceedings except for that provided by Tenn.Code Ann. § 40–27–106. Under that provision, the governor may commute the punishment from death to life imprisonment upon the certificate of this Court, "that in its opinion, there are extenuating circumstances attending the case, and that the punishment ought to be commuted." *Id.*

The respondent alleges several reasons why this Court should issue a certificate of commutation. First, he asserts that Harold Davis, who testified at trial that he saw the respondent shoot the victim, has since recanted his testimony. Second, citing the opinion of two experts, he contends that the fatal shot was not fired from his gun. Finally, he challenges this Court's and the Sixth Circuit Court of Appeal's prior characterizations of his testimony at trial as a "confession." *See State v. Workman*, 667 S.W.2d 44 (Tenn.1984); *Workman v. Bell*, 160 F.3d 276 (6th Cir.1998).

The State counters that the respondent's assertions are inherently suspect and that the Court should consider only record facts.

While members of this Court disagree regarding the role of the Court in recommending commutation, we all agree on two basic precepts: first, on the issue of recommending commutation, the Court should consider only facts contained in the record, or facts which are uncontroverted. Second, we all agree there is no legal basis why an execution date should not be set because the respondent has exhausted all judicial remedies and the conviction and sentence are final as a matter of law.

■ The respondent has cited no authority that would allow this Court to consider unproven assertions contained in a petition that challenge the accuracy of the jury's verdict and the credibility of the evidence over seventeen years after the judgment of conviction and also after the exhaustion of direct appeals, state post-conviction procedures and federal habeas corpus procedures. The Court's jurisdiction is appellate only, Tenn.Code Ann. § 16–3–201(a), and we are bound by precedent and statutes setting forth the process of appellate review. Moreover, certificates of commutation are issued pursuant to Tenn.Code Ann. § 40–27–106 only when the "extenuating circumstances attending the case" are based upon the facts in the record, *see Bass v. State*, 191 Tenn. 259, 231 S.W.2d 707 (Tenn.1950), or a combination of record facts and new evidence that is uncontroverted, *see Anderson v. State*, 215 Tenn. 83, 383 S.W.2d 763 (1964); *Green v. State*, 88 Tenn. 634, 14 S.W. 489 (1890). Section 40–27–106 does not authorize relief when a death-sentenced prisoner, in what amounts to an original action, relies upon extra-judicial facts and challenges the accuracy of the jury's verdict and the credibility of the evidence upon which his or her conviction was based. In contrast, we note that the Governor may

review a request for commutation without being bound by such limitations.[1]

■ After careful review of the record of the proceedings in this case, the majority concludes that the record supports both the conviction and sentence. The respondent has presented no extenuating circumstances that warrant issuance of a certificate of commutation. Accordingly, the Motion for Certificate of Commutation is DENIED.

■ Furthermore, all members of the Court agree that there is no legal basis why an execution date should not be set. The respondent has unsuccessfully challenged his conviction and sentence through direct appeal to this Court and has unsuccessfully pursued state post-conviction and federal habeas corpus remedies. The federal proceedings were completed when the United States Supreme Court rejected his petition to rehear on November 29, 1999. He has thus exhausted the standard three-tier appeals process. There exists no procedure, no method, and no means by which the conviction or the sentence can be further tested or scrutinized under the procedural guidelines within which this Court must function. His case is therefore ripe for the setting of an execution date. Accordingly, the State's motion to set an execution date is GRANTED. It is hereby ORDERED, ADJUDGED and DECREED by this Court that the Warden of the Riverbend Maximum Security Institution, or his designee, shall execute the sentence of death as provided by law on the 6th day of April, 2000, unless otherwise ordered by this Court or other appropriate authority. Counsel for Philip Workman shall provide a copy of any order staying execution of this order to the Office of the Clerk of the Appellate Court in Nashville.

The Clerk shall expeditiously furnish a copy of any order of stay to the Warden of the Riverbend Maximum Security Institution.

/s/ Riley Anderson
Chief Justice

HOLDER, J., concurs.

DROWOTA, J., see separate Concurring Order.

BARKER, J., see separate Concurring Order.

BIRCH, J., Concurring in Part and Dissenting in Part—see separate Order.

DROWOTA, Justice, concurring.

I fully concur with the Court's order setting an execution date and denying the respondent's request for a certificate of commutation pursuant to Tenn.Code Ann. § 40–27–106 (1997). However, I write separately to explain the jurisprudential landscape that existed at the time Section 40–27–106 was enacted, to discuss the important role of *executive* clemency and commutation in the Anglo–American tradition of law, and to emphasize that the respondent should take the opportunity to file an application for executive clemency. A final decision on the application should be rendered only after careful review and full consideration by the Governor of the facts and circumstances of this case and the circumstances of other similar first degree murder cases in Tennessee, regardless of the sentence imposed. *See* Tenn.Code Ann. § 40–27–105 (1997).

The respondent's request for a certificate of commutation is grounded upon Tenn.Code Ann. § 40–27–106 (1997), which provides that "[t]he governor may, like-

1. Despite the limitations on this Court's consideration of new facts, we note that when evidence supporting the respondent's current allegations was presented in appropriate proceedings, it was considered and rejected by both state and federal courts. *See Workman v. State,* 868 S.W.2d 705 (Tenn.Crim.App. 1993), *app. denied* (Tenn.1993), *cert. denied,*

*Workman v. Tennessee,* 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 555 (1994); *Workman v. Dutton,* No. 94–2577 GA (W.D. Tenn. filed Oct. 28, 1996), *aff'd sub nom. Workman v. Bell,* 178 F.3d 759 (6th Cir.1998), *cert. denied* —— U.S. ——, 120 S.Ct. 264, 145 L.Ed.2d 221 (Oct. 4, 1999), *reh'g denied* S.Ct. (Nov. 29, 1999).

wise, commute the punishment from death to imprisonment for life, upon the certificate of the supreme court, entered on the minutes of the court, that in its opinion, there were extenuating circumstances attending the case, and that the punishment ought to be commuted." Although the statute has been applied in a handful of prior cases by this Court,[1] none of those cases, nor any other Tennessee authority, contains a comprehensive discussion of the statute. Furthermore, there appears to be no similar statute in any other state although some states have constitutional provisions which are analogous.[2]

The statutory provision was originally enacted in 1858.[3] At the time of its enactment, there were few judicial avenues of review and relief available to persons convicted of first degree murder. For instance, there are early decisions which appear to espouse a limited view of the power of an appellate court to modify a sentence. *See* Annotation, *Reduction by Appellate Court of Punishment Imposed by Trial Court*, 29 A.L.R. 318 (1924) (stating that if a trial court pronounced a

sentence in excess of the punishment provided by law, the judgment was deemed wholly illegal so that the only judgment which the appellate court could render was one of reversal). Moreover, the state constitutional writ of habeas corpus was available to challenge only void, as opposed to voidable, judgments. *See Taylor v. State*, 995 S.W.2d 78, 83 (Tenn.1999); *Archer v. State*, 851 S.W.2d 157, 164 (Tenn.1993); *State v. Galloway*, 45 Tenn. (5 Cold.) 326, 336–37 (1868). The writ of error coram nobis, though it existed in 1858, *see* Code 1858, § 3111, was limited in scope to civil proceedings and was not extended to criminal proceedings until 1955. *See State v. Mixon*, 983 S.W.2d 661, 668 (Tenn.1999) (discussing the history of the writ of error coram nobis). The Post–Conviction Procedure Act was not enacted until 1967. *See House v. State*, 911 S.W.2d 705, 709 (Tenn.1995); *Archer*, 851 S.W.2d at 162. Finally, the statute requiring comparative proportionality review of Tennessee death penalty cases was not enacted until 1977, almost 120

1. *Anderson v. State*, 215 Tenn. 83, 383 S.W.2d 763 (1964); *Leroy Powell v. State*, No. 50869 (Tenn. February 25, 1958); *Carl Hill v. State*, No. 48841 (Tenn. July 20, 1956); *Bass v. State*, 191 Tenn. 259, 231 S.W.2d 707 (1950); *Temples v. State*, 183 Tenn. 531, 194 S.W.2d 332 (1946); *Morris Ridley v. State*, No. 38826 (Tenn. July 2, 1945); *Jess Clark v. State*, No. 36339 (Tenn. November 10, 1942); *J.B. Shannon v. State*, No. 31272 (Tenn. February 15, 1938); *Ray Flynn v. State*, No. 32041 (Tenn. July 2, 1938); *Luther Johnson v. State*, No. 32032 (Tenn. July 2, 1938); *Freddo v. State*, 127 Tenn. 376, 155 S.W. 170 (1913); *Green v. State*, 88 Tenn. 634, 14 S.W. 489 (1890); *State v. Becton*, 66 Tenn. 138 (1874).

2. *See* Cal. Const. of 1879, art. V, § 8(a) ("The Governor may not grant a pardon or commutation to a person twice convicted of a felony except on recommendation of the Supreme Court, 4 judges concurring."); La. Const. of 1974, art. VI, § 5(E)(1) ("The governor may grant reprieves to persons convicted of offenses against the state and, upon recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses."); Pa. Const. art. VI, § 9(a) ("In all criminal cases

except impeachment the Governor shall have power to remit fines and forfeitures, to grant reprieves, commutation of sentences and pardons; but no pardon shall be granted, nor sentence commuted, except on the recommendation in writing of a majority of the Board of Pardons, and in the case of a sentence of death or life imprisonment, on the unanimous recommendation in writing of the Board of Pardons, after full hearing in open session, upon due public notice."); Tx. Const. art. IV, § 11(b) ("In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons.").

3. The Code of 1858, section 5259 provided as follows: " The Governor may, likewise, commute the punishment from death to imprisonment for life, upon the certificate of the Supreme Court, entered on the minutes of the court, that, in their opinion, there were extenuating circumstances attending the case, and that the punishment ought to be commuted."

years later. *See State v. Bland,* 958 S.W.2d 651, 662–63 (Tenn.1997).

Even though the statute upon which the respondent now relies was, at the time of its enactment, one of only a few avenues of relief available to prisoners sentenced to death, the statute has always been applied sparingly by this Court. The respondent has not cited, nor has independent research revealed, any case in which the statute has been applied since the Post–Conviction Procedure Act was adopted in 1967. Moreover, Section 40–27–106 has never been previously applied to afford relief to a death-sentenced prisoner who files what amounts to an original action in this Court and relies upon extra-judicial "new evidence" to challenge the accuracy of the jury's verdict and the credibility of the evidence upon which his or her conviction was based. Research reveals that certificates of commutation pursuant to Tenn.Code Ann. § 40–27–106 have been issued only when the "extenuating circumstances attending the case" are based upon facts contained in the record of the judicial proceedings, *see Bass v. State,* 191 Tenn. 259, 231 S.W.2d 707 (1950), or upon a combination of record facts and new evidence that is uncontroverted, *see Anderson v. State,* 215 Tenn. 83, 383 S.W.2d 763 (1964); *Green v. State,* 88 Tenn. 634, 14 S.W. 489 (1890).

Assuming for the sake of argument, however, that the respondent's extra-judicial "new evidence" could be considered, such evidence is disfavored because it was "obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Herrera v. Collins,* 506 U.S. 390, 417, 113 S.Ct. 853, 869, 122 L.Ed.2d 203 (1993). Moreover, the evidence was obtained over eighteen years after commission of the crime. *Cf. McCleskey v. Zant,* 499 U.S. 467, 491, 111 S.Ct. 1454, 1468, 113 L.Ed.2d 517 (1991) ("[T]he 'erosion of memory and dispersion of witnesses that occur with the passage of time' prejudice the government and diminish the chances of a reliable criminal adjudication.") In addition, the evidence is itself internally inconsistent thereby further undermining its reliability. Finally, the "new evidence" must be considered in light of the proof of the respondent's guilt at trial, proof that included the eyewitness testimony of Officers Stoddard and Parker. The recantation of witness Harold Davis notwithstanding, the evidence of the respondent's guilt is overwhelming. Officer Stoddard was in close proximity to the victim, Officer Oliver, and the respondent, Workman, at the time the victim was shot. Not only did Officer Stoddard hear the shots fired and see the victim lying on the ground, but he was also fired upon and wounded by the respondent. Although not in close proximity when the victim was shot, Officer Parker came around the corner after hearing shots fired and saw Officer Oliver fall to the ground. There is no evidence that either of these witnesses fired a weapon during the struggle between the victim and the respondent. Furthermore, the evidence includes testimony by the respondent, who admits to pulling the trigger and firing all the bullets from his gun. This testimony combined with all other evidence leaves no doubt that the respondent killed Officer Oliver. Accordingly, the respondent's claim that his testimony has been improperly characterized as a "confession" is without merit. As to the new expert testimony concerning the consistency of the appearance of the fatal wound with bullets fired from the respondent's gun, this evidence merely conflicts with the testimony of the medical examiner at trial that the wound was consistent with a bullet fired from a high caliber weapon. The respondent has presented no uncontroverted evidence that someone else fired the fatal shot. Even considering the "new evidence", the respondent has presented no extenuating circumstances that warrant issuance of a certificate of commutation from this Court.

Consequently, in light of the many avenues of judicial review which now exist and are available to prisoners sentenced to

death and in light of the fact that the respondent relies solely upon extra-judicial "new evidence" that is aimed at impeaching the verdict of the original jury, I fully concur in the Court's denial of the respondent's request for a certificate of commutation pursuant to Tenn.Code Ann. § 40–27–106.

Having so stated, I emphasize that executive clemency operates outside the letter of the law. The executive clemency process is a vehicle for mercy. *Ex parte Tucker*, 973 S.W.2d 950, 952 (Tex.Crim. App.1998) (Overstreet, J., concurring). The executive is not required to confine his or her clemency determination to those facts contained in the record of the judicial proceeding. Executive clemency has been appropriately described by the United States Supreme Court both as the " 'fail safe' in our criminal justice system" and "the traditional remedy for claims of innocence based on new evidence, discovered too late in the day to file a new trial motion...." *Herrera*, 506 U.S. at 415–17, 113 S.Ct. at 868–69; *see also Workman v. Bell*, No. 96–6652 (6 th Cir. May 10, 1999) (Order on Petition for Rehearing En Banc) (Citing *Herrera* and stating "[a]lthough this court expresses no view as to whether Workman is actually innocent, if that is the situation, 'the traditional remedy for claims of innocence based on new evidence, discovered too late in the day to file a new trial motion, has been executive clemency.' ").

The clemency power in England was vested in the Crown and can be traced back to the 700's. *Herrera*, 506 U.S. at 412, 113 S.Ct. at 866. Blackstone characterized executive clemency as "one of the great advantages of monarchy in general, above any other form of government." 4 W. Blackstone, *Commentaries* *397. Because there was no right of appeal until 1907, clemency provided the principal avenue of relief for individuals convicted of criminal offenses, most of which were capital crimes. *Herrera*, 506 U.S. at 412, 113 S.Ct. at 867.

Both the Constitution of the United States and the Constitution of Tennessee adopt the British model and give to the executive the power to grant reprieves and pardons. United States Const. Art. 2, sec. 2, cl. 1; Tenn. Const. Art. III, sec. 6; *see also Carroll v. Raney*, 953 S.W.2d 657, 659–60 (Tenn.1997). In an early case, Chief Justice Marshall provided the following explanation of the relationship between the executive clemency power and the judicial process.

A pardon is an act of grace, proceeding from the power entrusted with the execution of the laws, which exempts the individual, on whom it is bestowed, from the punishment the law inflicts for a crime he has committed. It is the private, though official act of the executive magistrate, delivered to the individual for whose benefit it is intended, and not communicated officially to the court. *It is a constituent part of the judicial system, that the judge sees only with judicial eyes, and knows nothing respecting any particular case, of which he is not informed judicially. A private deed, not communicated to him, whatever may be its character, whether a pardon or release, is totally unknown and cannot be acted on. The looseness which would be introduced into judicial proceedings, would prove fatal to the great principles of justice, if the judge might notice and act upon facts not brought regularly into the cause. Such a proceeding, in ordinary cases, would subvert the best established principles, and overturn those rules which have been settled by the wisdom of ages.*

*United States v. Wilson*, 32 U.S. (7 Pet.) 150, 160–61, 8 L.Ed. 640 (1833) (emphasis added).

Although Justice Marshall made this statement more than 150 years ago, the pronouncement remains sound. The respondent's "new evidence" consists entirely of "facts not brought regularly into the cause." In other words, the "new evidence" is not a part of the record in any

regular judicial proceeding. Accordingly, it is clear that a request for executive clemency pursuant to Tenn.Code Ann. § 40–27–105 is the appropriate and only available avenue for the respondent to assert his claims which are based upon new extra-judicial information.

Although I fully realize that executive clemency decisions are outside the domain of the courts, in this separate concurring order, I feel it is appropriate to state my concerns. In almost twenty years of service as a justice on the Tennessee Supreme Court, I have participated in reviewing the sentences in 117 death penalty cases and have been the author of the majority opinion of this Court in thirty-one of those cases and the author of the minority opinion in five of those cases. In addition, I have reviewed innumerable reports of trial judges in first degree murder cases in which a sentence of life imprisonment or life imprisonment without the possibility of parole was imposed. I have no hesitation in observing that the circumstances of this case are by no means as egregious as most of the death penalty cases I have reviewed. *See, e.g., State v. Pike,* 978 S.W.2d 904 (Tenn.1998); *State v. Blanton,* 975 S.W.2d 269 (Tenn.1998); *State v. Hall,* 958 S.W.2d 679 (Tenn.1997); *State v. Cazes,* 875 S.W.2d 253 (Tenn.1994); *State v. Howell,* 868 S.W.2d 238 (Tenn.1993); *State v. Smith,* 868 S.W.2d 561 (Tenn.1993); *State v. Caughron,* 855 S.W.2d 526 (Tenn.1993); *State v. Alley,* 776 S.W.2d 506 (Tenn.1989); *State v. West,* 767 S.W.2d 387 (Tenn.1989); *State v. Melson,* 638 S.W.2d 342 (Tenn. 1982). Furthermore, the circumstances of this case are less egregious than many of the life sentence cases I have reviewed. *See, e.g., State v. Harris,* 989 S.W.2d 307 (Tenn.1999); *State v. Jack Jay North,* No. 02C01–9512–CC–00369, 1996 WL 711473 (Tenn.Crim.App., at Jackson, Dec. 12, 1996), app. denied (Tenn.1997); *State v.*

*Kelley,* 683 S.W.2d 1 (Tenn.Crim.App. 1984), app. denied (Tenn.1984); *State v. Turnbill,* 640 S.W.2d 40 (Tenn.Crim.App. 1982), app. denied (Tenn.1982); *State v. Wright,* 618 S.W.2d 310 (Tenn.Crim.App. 1981), app. denied (Tenn.1981). Clearly, these observations provide no legal ground for relief. The issue of statutory comparative proportionality was addressed and rejected in the respondent's direct appeal to this Court. *State v. Workman,* 667 S.W.2d 44, 46 (Tenn.1984), *cert. denied* 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984).[4] However, with respect to any executive clemency application that may be filed by the respondent, it is my belief that a final decision should be rendered only after full scrutiny and careful consideration has been given to both the circumstances of the respondent's particular case and the circumstances of other similar first degree murder cases in Tennessee, regardless of the sentence imposed. The date set for execution of the sentence of death, April 6, 2000, affords the Governor sufficient time to carefully consider any executive clemency application that may be filed by the respondent.

BARKER, Justice, concurring.

I concur with the Court's order setting an execution date in this case and denying the respondent's request for a certificate of commutation pursuant to Tennessee Code Annotated section 40–27–106 (1997). Because my reasons for denying the respondent's request for a certificate of commutation are somewhat different from those of my colleagues, I write separately to explain my views.

Each member of this Court has carefully read the transcript of the original trial in this case. We have also reviewed the opinions and orders which have resulted from the respondent's nearly twenty years

---

4. Although this Court's proportionality review has been expanded upon since the *Workman* decision, *see State v. Barber,* 753 S.W.2d 659, 665–66 (Tenn.1988); *State v. Bland,* 958 S.W.2d 651, 661–674 (Tenn.1997), we clearly stated in *Bland* that comparative proportionality review is not constitutionally required. Therefore, such a claim provides no basis for post-conviction relief.

of litigation in both the state and federal systems. Each member of this Court agrees that the respondent has availed himself of all possible procedures and venues in an effort to seek judicial relief from his sentence of death. There are no more judicial avenues, either state or federal, available to the respondent. Recognizing that, the respondent is now requesting this Court to recommend by certification in accordance with Tennessee Code Annotated section 40–27–106 that the Governor commute his sentence to something less than death. In support of his request, counsel for the respondent have filed in this Court "evidence" which the respondent claims raises doubt about his guilt in this case. All of the members of this Court agree that we are not a fact-finding body and are in no position to consider those documents. *See* Tenn. Const. art. VI, § 2; Tenn.Code Ann. § 16–3–201(a) (1994). I agree with Justice Drowota that the "new evidence" presented to this Court by the respondent is not appropriate for our consideration. If any "extenuating circumstances" exist warranting this Court's issuing of a certificate of commutation, they must be based upon facts which have been established in the record. Not only do I see no such facts in the record, but the record fully supports the jury's sentence of death.

Moreover, in my view the statute authorizing this Court to certify to the Governor that a sentence of death ought to be commuted, *see* Tenn.Code Ann. § 40–27–106, has largely become obsolete. The statute was originally enacted in 1858 and has remained unchanged in our Code since 1932. Since that time, the trial and appellate procedures used in capital cases have been vastly expanded and improved. The trial in a capital case is now bifurcated with the jury first required to determine guilt or innocence, and if a defendant is found guilty, then a separate sentencing hearing is conducted. Before a jury may sentence an accused to death, it must find the presence of at least one statutorily defined aggravating circumstance, and the aggravating circumstance or circumstances must outweigh any mitigating circumstances. When the statute in question was originally enacted, there was no bifurcated trial and the jury was given little or no guidance in determining whether the defendant would be sentenced to life or death.

Likewise, the appellate process today affords a defendant multiple opportunities for thorough appellate review. The defendant may initially appeal his or her conviction and sentence to the Court of Criminal Appeals, which was created in 1967, then to this Court, and finally, the United States Supreme Court. If the defendant obtains no relief in his direct appeal, then the defendant may file a post-conviction petition pursuant to the Post Conviction Procedure Act, first enacted by our General Assembly in 1967. In the post-conviction process, the defendant may collaterally attack his or her conviction and sentence based upon any constitutional deprivations which existed in his original trial or appeal. If unsuccessful in a post-conviction proceeding in the state trial and appellate courts, the defendant has a right to seek habeas corpus relief in the United States District Court. If the federal trial court renders an unfavorable decision, the defendant has the right to appeal to the United States Court of Appeals, and finally, the defendant may seek appellate review in the United States Supreme Court.

All of the procedural safeguards now in place are designed to, and in my opinion do, allow the judiciary to prevent a defendant from being executed unjustly. In 1977, the General Assembly charged this Court with reviewing death sentences to determine whether "(A) The sentence of death was imposed in any arbitrary fashion; (B) The evidence supports the jury's finding of statutory aggravating circumstance or circumstances; (C) The evidence supports the jury's finding that the aggravating circumstance or circumstances outweigh any mitigating circumstances; and

(D) The sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the nature of the crime and the defendant." *See* 1977 Tenn. Pub. Acts ch. 51, § 4(c) (currently codified at Tenn.Code Ann. § 39–13–206(c)(1) (1997)). In addition, the legislature has also given this Court the power to modify the punishment of death to life imprisonment or to life imprisonment without the possibility of parole. *See* Tenn. Code Ann. § 39–13–206(d)(2).

Tennessee Code Annotated section 40–27–106 allowing for a certificate of commutation was enacted at a time when this Court did not have the ability to review or modify a sentence of death based upon arbitrariness, proportionality, or evidentiary support. As such, the only avenue available to the courts to correct a manifest injustice was through a recommendation of executive clemency. Since 1977, however, this Court has possessed the statutory authority to evaluate the appropriateness of a death sentence on direct review and even to modify such a sentence on its own if the statutory and procedural requirements are met. Virtually every "extenuating circumstance" warranting modification can reasonably fit within the four factors that this Court is required to consider in all death penalty reviews, and consequently, the statute providing for a certificate of commutation has been rendered obsolete in most all cases.

On the direct appeal of the respondent's sentence, this Court applied the statutory factors which would justify judicial modification, and it unanimously determined that such a modification was not appropriate. When a defendant unsuccessfully challenges his or her conviction or sentence through the full panoply of state and federal procedures, it is highly unlikely that there will be any "extenuating circumstances" in the judicial record so as to justify a certificate from this Court to the governor recommending a commutation. If there are any "extenuating circumstances," they will be outside of the judicial record which may be proper for the Governor to consider, but not this Court.

Finally, I am also of the opinion that there exists a serious question concerning the constitutionality of Tennessee Code Annotated section 40–27–106. The statute may represent an unconstitutional infringement upon the doctrine of separation of powers. I believe that application of section 40–27–106 is constitutionally suspect because a recommendation from this Court respecting the executive's commutation power, although granted by statute, may be wholly without the constitutional power of the judiciary in this State.

The Constitution grants the power to "grant reprieves and pardons" solely to the governor, *see* Tenn. Const. art. III, § 6, and this power is to be exercised by the governor alone "without reference to the Board of Paroles or anyone else." *Rowell v. Dutton,* 688 S.W.2d 474, 476–77 (Tenn.Crim.App.1985). The very purpose of granting to the executive the exclusive exercise of the clemency power is so that some authority other than the courts is empowered to ameliorate or avoid particular criminal judgments. In this respect, the governor's clemency power is an important check entrusted to the executive to afford relief from undue harshness or evident mistake occurring during the normal administration of the criminal law by the courts. *Cf. Ex Parte Grossman,* 267 U.S. 87, 120–21, 45 S.Ct. 332, 69 L.Ed. 527 (1925).

Because the governor's clemency power serves as a check on the exercise of judicial power by this Court, I believe that it is inappropriate for this Court to obtrude in the executive's exercise of the clemency power by recommendation or otherwise. The Constitution is quite explicit that "[n]o person or persons belonging to [any branch of government] ... shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted." Tenn. Const. art. II, § 2. I find no provision in the Constitution granting this Court a role

in the clemency process itself, and although this power is granted by statute, I doubt whether it is not within judicial competency "to control, interfere with, or even to advise the Governor" with respect to the clemency power. *Cf. Eacret v. Holmes,* 215 Or. 121, 333 P.2d 741, 743 (1958). I recognize that a certificate issued by this Court recommending clemency can have no force of law and in no way compels any executive action; nevertheless, to the extent that any statute authorizes this Court to attempt to influence a governor's clemency decision, that statute may overstep the constitutional authority given the judicial branch of our government.[1]

The Governor is fully capable of reviewing the record in the respondent's case independently of this Court. Therefore, should the respondent choose, he may seek a commutation of his sentence pursuant to the procedure contained in Tennessee Code Annotated section 40–27–105. The procedure outlined in that section does not involve this Court, but rather it is a procedure established for the Governor's independent decision.

For these reasons, I concur in the order granting the State's motion to set an execution date and denying the respondent's motion requesting this Court to issue a certificate of commutation to the governor.

BIRCH, Justice, concurring in part and dissenting in part.

On March 20, 1982, a jury convicted Philip R. Workman of first degree murder and thereafter imposed a sentence of death. Since then, the conviction and sentence have together been reviewed to the fullest extent allowable under state and federal procedural guidelines. Even in the face of this withering scrutiny, however, the conviction and sentence continue in force as then imposed.

Given the state of the record, there exists, in my view, no procedure, no method, no means by which the conviction or the sentence or the process through which they were produced can be further tested or scrutinized under the procedural guidelines within which this Court must function. Therefore, the conviction and sentence are, in my opinion, final as a matter of law.

In most civilized societies, the power to commute a death sentence is within the prerogative of the executive. This power is usually derived from the principal governing document of the society. In Tennessee, this authority is vested in the Governor by our Constitution:

> He shall have power to grant reprieves and pardons, after conviction, except in cases of impeachment.

Tenn. Const. art. III, § 6.

To complement the Governor's constitutional power to commute a sentence of death, our General Assembly has, in its wisdom, seen fit to provide, by statute, the means by which the Supreme Court may certify to the Governor that, in the opinion of the Court, there were extenuating circumstances attending the case and the punishment ought to be commuted. This enabling statute, Tenn.Code Ann. § 40–27–106, provides as follows:

> The governor may, likewise, commute the punishment from death to imprisonment for life, upon the certificate of the supreme court, entered on the minutes of the court, that in its opinion, there

---

1. I do believe, however, that the certificate of commutation in *Collins v. State,* 550 S.W.2d 643, 649 (Tenn.1977), was properly issued. In *Collins,* this Court recommended commutation of all death sentences in Tennessee because the statute under which the sentences were imposed was presumably unconstitutional in the wake *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), and *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). A certificate of commutation was appropriate in that case because the certificate was founded upon a legal ground that plainly called into question the constitutionality of the sentences, and this legal ground did not exist at the time of the direct appeals.

817

were extenuating circumstances attending the case, and that the punishment ought to be commuted.

Tenn.Code Ann. § 40–27–106 (1997).

By no means does this statute restrict, expand, or in any way affect, in the legal sense, the authority of the Governor to exercise his constitutional power of commutation. It serves, simply, as a vehicle through which the Court may ethically and on the record communicate with the Governor in aid of his exclusive exercise of the power to commute sentences.

In this regard, the Supreme Court has offered its communication to the Governor on many occasions. *See Collins v. State,* 550 S.W.2d 643 (Tenn.1977); *Bowen v. State,* 488 S.W.2d 373 (Tenn.1972); *Bass v. State,* 191 Tenn. 259, 231 S.W.2d 707 (1950); *Temples v. State,* 183 Tenn. 531, 194 S.W.2d 332 (1946); *Porter v. State,* 177 Tenn. 515, 151 S.W.2d 171 (1941); *Woodruff v. State,* 164 Tenn. 530, 51 S.W.2d 843 (1932); *Freddo v. State,* 127 Tenn. 376, 155 S.W. 170 (1913); *Green v. State,* 88 Tenn. 634, 14 S.W. 489 (1890); *Clark v. State,* 67 Tenn. 591 (1876); *Greer v. State,* 62 Tenn. 321 (1874); *State v. Becton,* 66 Tenn. 138 (1874). In some cases, the Court recommended commutation; in others, commutation was expressly discouraged.

Because the Court is not of one mind on the commutation issue, I am firmly convinced that it is my duty to separately address Workman's request for a recommendation of commutation and to do so on the record.

Now, therefore, in accordance with that duty described above, pursuant to and independent of the enabling statute cited herein, and after a careful consideration of the pertinent parts of the entire record, I do hereby certify to His Excellency, the Honorable Don Sundquist, Governor of the State of Tennessee, that there were extenuating circumstances attending this case

and that the punishment of death ought to be commuted.