**James ROWELL, Appellant,**

v.

**Michael DUTTON, Warden, Tennessee State Penitentiary, et al., Appellees.**

Court of Criminal Appeals of Tennessee, at Nashville.

Jan. 9, 1985.

Permission to Appeal Denied by Supreme Court March 25, 1985.

Daniel B. Eisenstein, Nashville, for appellant.

W.J. Michael Cody, Atty. Gen., David M. Himmelreich, Asst. Atty. Gen., Thomas H. Shriver, Dist. Atty. Gen., Victor S. Johnson, III, Asst. Dist. Atty. Gen., Nashville, for appellees.

## OPINION

SCOTT, Judge.

This is an appeal of the denial of the appellant's petition for the writ of habeas corpus. Finding merit to his position, the judgment of the trial court is reversed and remanded with directions.

On May 20, 1974, in Shelby County, the appellant was convicted of seven counts of armed robbery. He received sentences of twenty years in the state penitentiary to be served concurrently. The expiration date of his original sentence, taking into account good time and honor time, was originally calculated as January 3, 1985. The appellant has never lost any of his good and honor time.

On November 26, 1979, Governor Lamar Alexander extended Executive Clemency to

the appellant, and his sentence was commuted as follows:

> NOW, THEREFORE, I, Lamar Alexander, Governor, by virtue of the power and authority vested in me by Article III of the Constitution of the State of Tennessee do hereby commute the sentences of James Edward Rowell to ten to twenty years, which commutation will make Mr. Rowell immediately eligible for regular parole.

This grant of Executive Clemency was, by its terms, effective on December 5, 1979. Of course, the appellant was released from the penitentiary that day.

Subsequently, on September 17, 1982, a warrant of arrest was issued by the Director of Paroles, alleging that the Governor had received information that the appellant was charged with possession of a controlled substance for resale and possession of a .32 caliber revolver on or about September 2, 1982. On March 31, 1983, the appellant entered a plea of guilty of possession of marijuana for resale and received a sentence of one year in the state penitentiary. Then on April 27, 1983, the Board of Paroles held a commutation revocation hearing, found the appellant to be in violation of his commutation, and recommended to the Governor that his commutation be revoked, his twenty year sentence restored and the loss of eight hundred seven days of street time credit.

On November 22, 1983, Governor Alexander issued the revocation of clemency and followed precisely the board's recommendation. The new expiration date of his sentence was fixed as June 21, 1986.

At the hearing on the petition for the writ of habeas corpus, the appellant introduced the testimony of Donald W. Wilks, a records clerk at the Tennessee State Penitentiary, and Betty Stiddum, the senior records clerk at the Central Records Division of the Department of Correction. Their testimony revealed that the appellant had also received two hundred sixty (260) days of Program Participation Sentence Credits (PPSC) as of the date that his sentence was commuted in December 1979.

After he returned to the penitentiary under the warrant of arrest issued by the Director of Paroles, the appellant began to accumulate PPSC at the rate of twelve per month, beginning in October 1982. He received these credits at that rate for thirteen months for a total of one hundred fifty-six (156) additional days of PPSC. These days added to his two hundred sixty (260) days yielded a credit of four hundred sixteen (416) days which are subtracted from the January 3, 1985 expiration date. This is calculated by counting backward on the calendar four hundred sixteen (416) days. The calculation includes the starting day, January 3, 1985, and, according to their testimony, yielded an expiration date of November 15, 1983. All of these calculations were in the computer and were known to the correction officials who advised Governor Alexander. However, there was a twelve day error because the PPSC credits for October 1982 had not been properly entered. Adding these twelve days to the November 15, 1983 date would yield an expiration date of the appellant's sentence on November 27, 1983.

According to Ms. Stiddum, when the records were properly calculated, the appellant's original sentence expired on November 15, 1983. Furthermore, the additional one year sentence received by the appellant for the marijuana conviction had already expired on September 2, 1983.

█ Thus, the net result of all of these calculations is that at the time that Governor Alexander signed the revocation of clemency on November 22, 1983, the appellant's sentence had already expired. There simply was no sentence to revoke.

█ The writ of habeas corpus is the proper vehicle by which an imprisoned person may obtain relief where the term of imprisonment has expired. *Adams v. Russell*, 179 Tenn. 428, 167 S.W.2d 5, 6 (1942).

[3–6] The power of the Governor to pardon, after conviction, is constitutional power. Article 3, § 6, Tennessee Constitution. His power to grant reprieves, commutations, and pardons, in all criminal cases, is

also specifically set forth in TCA § 40–27–101. But the power is derived from the Constitution, not the statutes. *State ex rel. Bedford v. McCorkle*, 163 Tenn. 101, 40 S.W.2d 1015, 1016 (1931). The power resides in the Governor and can be exercised without reference to the Board of Paroles or anyone else. *Smith v. Thompson*, 584 S.W.2d 253, 257 (Tenn.Cr.App. 1979). The Governor can grant conditional pardons upon such conditions and with such restrictions and limitations as he deems proper. TCA § 40–27–102. The same principle applies to the lesser grant, the commutation. Furthermore, the Governor has the power to revoke a commutation and recommit the prisoner upon the violation of one of the conditions, restrictions or limitations. *State ex rel. Bedford v. McCorkle*, supra.

■ However, we have found no authority for the proposition that the Governor can exercise his revocation authority over a commutee after the expiration of his sentence. Thus we hold that the Governor's authority to revoke exists only so long as the commutee's sentence has not expired. Any other result would mean that the Governor and his successors in office would retain the power to revoke a commutation throughout the balance of a commutee's life, regardless of the offense, and could lead to absurd results.

The state argues that once the parole board made its recommendation to revoke the appellant's commutation in April 1983, the appellant was placed on notice and that the Governor's signature was merely a formality, and that it did not matter when he signed the revocation order.

■ However, the decision of the parole board to recommend revocation is only that. As heretofore noted, the power to commute sentences resides only in the Governor. The concomitant power to revoke commutations likewise resides only in the Executive.

That the Governor could have taken the action that he did had the matter been brought to his attention in a timely manner is clear. What is unclear is why the Board of Paroles waited almost eight months from the date of the commutation hearing to present the matter to the Governor.

The appellant's sentence having expired at the time the commutation was revoked, the judgment must be reversed and the cause remanded with directions to issue the writ of habeas corpus, directing the appellant's release from the penitentiary forthwith.

DAUGHTREY, J., and RUSSELL, Special Judge, concur.