IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

FILED

September 29, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

FOR PUBLICATION

WILLIAM D. CARROLL,                )
                                   )      **Filed: September 29, 1997**
            Appellant,             )
                                   )      LAUDERDALE LAW
                                   )
Vs.                                )
                                   )
                                   )      HON. JOSEPH H. WALKER,
                                   )               JUDGE
FRED RANEY, WARDEN,                )
                                   )
            Appellee.              )      No. 02-S-01-9610-CC-00086

**For Appellant:**

Julie K. Pillow
Assistant Public Defender
Covington, Tennessee

Gary F. Antrican
Pubic Defender
Covington, Tennessee

**For Appellee:**

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Gordon W. Smith
Associate Solicitor General
Nashville, Tennessee

# OPINION

AFFIRMED                                        ANDERSON, C.J.

The defendant filed a writ of habeas corpus seeking his freedom from prison on the grounds his commuted sentence had expired prior to being revoked by the Governor. The trial court found that the commuted sentence from life to "22 years to life" had expired before the Governor's revocation and granted the defendant's petition for the writ of habeas corpus. The Court of Criminal Appeals reversed, holding that the Governor's commutation was conditional and that the Governor had the authority to revoke the commutation at any time throughout the defendant's life.

Although we disagree that the commutation contained an express condition, we conclude the Governor had the authority to first commute the sentence to an indeterminate term of "22 years to life," and also to revoke the commutation at any time during the defendant's life because the defendant was considered in legal custody until his life sentence expired at his death. Accordingly, we affirm the Court of Criminal Appeals' judgment based on the separate rationale developed below.

## BACKGROUND

In May of 1962, the defendant, William D. Carroll, was convicted of rape and sentenced to death, which was then an available punishment for the offense.[1] In 1964, Governor Frank Clement commuted Carroll's sentence to a term of life imprisonment. In November of 1972, Carroll's life sentence was again commuted by Governor Winfield Dunn to a term of "22 years to life." The defendant was released on parole in December of 1972, but convicted the following year of robbery with a deadly weapon. In March of 1974, Governor

---

[1] The punishments for rape included death by electrocution, life imprisonment, or a determinate sentence of at least ten years. Tenn. Code Ann. § 39-3702 (1955 & Supp. 1961).

Dunn revoked the commuted sentence and reinstated a term of life imprisonment.

In 1992, the defendant, who was then incarcerated at Fort Pillow prison, filed a petition for the writ of habeas corpus, alleging that the commuted sentence of "22 years to life" had expired in 1973, or prior to the governor's purported revocation.[2]  Although the trial court initially denied relief, the Court of Criminal Appeals remanded for a hearing to determine whether and when the commuted sentence had expired.  Carroll v. Raney, 868 S.W.2d 721 (Tenn. Crim. App. 1993).

On remand, the trial court found that the commuted sentence was unconditional and that, applying applicable sentencing credits, the defendant Carroll had served a 22-year sentence prior to the Governor's revocation.  The Court of Criminal Appeals reversed, holding that the commutation was conditional and that the Governor had authority to revoke the sentence at any time during the entire term.  We then granted the application for permission to appeal.

## GOVERNOR'S POWER OF COMMUTATION

We first turn to the Constitution to determine the extent of the Governor's power to commute sentences.  The Tennessee Constitution, art. III, § 6, states the Governor "shall have the power to grant reprieves and pardons, after conviction, except in cases of impeachment."  As this Court has recognized, the power to grant reprieves and pardons "embraces the right to commute a

---

[2] The remedy of habeas corpus is the proper procedure through which to allege that a sentence of imprisonment has expired.  Archer v. State, 851 S.W.2d 157 (Tenn. 1993); Ricks v. State, 882 S.W.2d 387 (Tenn. Crim. App. 1994).

-3-

sentence, that is, to impose a lesser or shorter sentence for the sentence imposed following a defendant's conviction." Bowen v. State, 488 S.W.2d 373, 375 (Tenn. 1972); see also Ricks v. State, 882 S.W.2d at 391. The commuted sentence to a lesser term stands as if it had been the judgment imposed in the first instance. Bowen, 488 S.W.2d at 375.

The Governor's power to grant reprieves, pardons and commutations is limited only by the language in the Constitution. State ex rel. Bedford v. McCorkle, 163 Tenn. 101, 40 S.W.2d 1015, 1016 (1931). Thus, while the power is also recognized by statute, see, Tenn. Code Ann. § 40-27-101 (1990), this Court has observed:

> The vestiture of the power to grant reprieves and pardons in the chief executive is exclusive of all other departments of the state, and the Legislature cannot, directly or indirectly, take it from his control, and vest it in others, or authorize or require it to be exercised by any other officer or authority. It is a power and a duty intrusted to his judgment and discretion, which cannot be interfered with, and of which he cannot be relieved.

State ex rel. Rowe v. Connor, 166 Tenn. 393, 61 S.W.2d 471, 472 (1933). More recently, the Court of Criminal Appeals has declared "neither the legislature nor the judicial branch of government has the authority to regulate or control the governor's power to commute a sentence." Ricks v. State, 882 S.W.2d at 391.[3]

The Governor also has the authority to attach conditions or restrictions to a commuted sentence that are reasonable, legal, and possible for the defendant to perform. See, e.g., McCorkle, 40 S.W.2d at 1016 ("obey the law in every way,

---

[3] Similarly, the statutory provisions governing parole, Tenn. Code Ann. § 40-28-101--127 (1990 & Supp. 1996), specifically provide that nothing contained therein "shall be construed in any way as intended to modify or abridge the pardoning power of the governor." Tenn. Code Ann. § 40-28-128 (1990).

-4-

lead the life of a good citizen, and refrain from the use, sale, manufacture or possession . . . of intoxicants."); Ricks v. State, 882 S.W.2d at 393 ("parole and/or commutation supervision by the Bd. of Paroles until the expiration of his original sentence").  Upon a finding that a condition has been violated, the commuted sentence may be revoked by the Governor, provided that the sentence has not expired.  See Rowell v. Dutton, 688 S.W.2d 474, 477 (Tenn. Crim. App. 1985).

In this case, the defendant's argument is two-fold.  First, he argues that the commuted sentence of "22 years to life" must be interpreted as a 22-year determinate sentence because, at the time of the offense and at the time of the commutation, an indeterminate sentence could not be imposed for rape.  See Tenn. Code Ann. § 40-2707 (1975); Franks v. State, 187 Tenn. 174, 213 S.W.2d 105, 109 (1948).[4]  Second, he contends that the unconditional commutation of 22 years expired prior to the Governor's revocation of it.  The trial court agreed. The Court of Criminal Appeals, however, interpreted the commuted sentence as conditional, while conceding that the "22 years to life" was an indeterminate sentence.  Specifically relying on the "to life" language, the court concluded that the Governor had the authority to revoke the commutation of the defendant's sentence throughout the remainder of the defendant's life.

---

[4] Now codified in Tenn. Code Ann. § 40-20-107 (1990), the determinate/indeterminate distinction applied to offenses committed before July 1, 1982, when sentences were determined by the jury.  When a defendant was convicted of a felony, the jury was to impose a minimum and maximum term for the offense, i.e., an indeterminate sentence; for the most serious crimes, such as rape, the jury was to impose only a determinative sentence.  The distinction primarily pertained to a defendant's parole eligibility date.  Tenn. Code Ann. § 40-3612 (1975)[Now Tenn. Code Ann. § 40-28-115 (1990)].  Sentencing by jury, and the determinate/indeterminate distinction, has been largely abolished in the present sentencing act.  Tenn. Code Ann. § 40-35-101, et seq. (1990 & Supp. 1996).

We agree with this result but not the reasoning. The majority view with regard to conditional pardons is that "the conditions, to be operative, must appear on the face of the paper, and must be clear and specific." 59 Am. Jur. 2d, Pardon and Parole, §63 at 52 (2d ed. 1987); 67A C.J.S., Pardon and Parole, §37 at 49 (1978 & Supp. 1997); see also Connors, 61 S.W.2d at 473 ("by apt language in the instrument itself, the Governor . . . can stipulate that he shall have exclusive power to determine whether the conditions of a pardon issued have been broken."). The trial court found, and both parties on appeal now recognize, that the Governor's commutation in this case did not contain an express condition. Although it is arguable that the words of the commuted sentence "to life" imply a condition, we believe this approach is less persuasive than the rationale we have chosen. Compare Ricks, 882 S.W.2d at 393, n. 23 (defendant "will be under parole and/or commutation supervision by the Board of Paroles until the expiration of his original sentence.").

In our view, the Governor had the constitutional authority pursuant to article III, § 6 of the Tennessee Constitution to grant a commuted sentence of "22 years to life," even if the applicable statutes precluded the imposition of an indeterminate sentence for the offense of rape. For example, in State v. Fields, 925 S.W.2d 561 (Tenn. Crim. App. 1996), the Governor commuted the defendant's death sentence to a term of ninety-nine years. The defendant later sought post-conviction relief on the basis that the only other legally effective sentence for first-degree murder at the time of his offense was life imprisonment, and not a term of ninety-nine years. The Court of Criminal Appeals rejected the assertion that the commuted sentence was illegal:

[T]he only sentence that could legally have been ordered by a judge or jury was life imprisonment. We conclude, however, that these cases and the law set forth therein do not and cannot restrict the constitutional authority of the Governor to commute a defendant's sentence to a term less than life. . . .

Id. at 563.

Other state courts have reached similar conclusions. The Maine Supreme Court did so in Baston v. Robbins, 135 A.2d 279 (Me. 1957). There, the Governor commuted the defendant's eight-year sentence for rape to a term from four to eight years. The defendant was paroled, but when he violated a condition of parole, he was ordered to complete his commuted sentence. He sought habeas corpus relief, alleging that the commutation was an indeterminate sentence in violation of Maine's statutory sentencing law. The Maine Supreme Court, after first noting that the commuted term was a reduction of the original sentence, held:

[A]uthority of the Governor and Council is derived from the Constitution and it may commute the sentence with such restrictions as may be deemed proper. If the restrictions and limitations imposed are in conflict with the provisions of any statute, then such statute does not control . . . .

Id. at 281. Likewise, in Green v. Gordon, 246 P.2d 38 (Cal.), cert. denied, 344 U.S. 886 (1952), the defendant argued that the Governor could not commute his death sentence to life without the possibility of parole because the only punishments established for the offense of first-degree murder by the legislature were death and life with the possibility of parole. The California Supreme Court responded that:

The penalties prescribed by statute . . . are the ones to be imposed by the trial court upon conviction of murder, and the statutory

-7-

provisions relating to such penalties and the right to parole do not purport to limit the governor's power to impose conditions upon a commutation of sentence.

Id. at 39; see also State v. Hunter, 447 A.2d 797 (Me. 1982); Schick v. Reed, 483 F.2d 1266 (D.C. Cir. 1973).

Accordingly, we conclude that the commuted sentence of 22 years to life imposed by the Governor was a proper exercise of his authority under article III, § 6 of the Tennessee Constitution, even if considered an indeterminate term that could not have been imposed under the statutes by the judge or jury when the defendant was convicted. It was a lesser sentence in that it provided a minimum term by which the defendant could be released earlier than he would have been had his sentence remained life imprisonment. Yet, at the same time, the defendant was considered in legal custody until the expiration of the maximum sentence. See State ex rel. Saunders v. Robinson, 190 Tenn. 101, 103, 228 S.W.2d 75 (1950) (a prisoner serving an indeterminate sentence, even if released on parole, is considered in legal custody until the expiration of the maximum sentence). Because a life sentence does not expire until a defendant's death, the defendant was still serving the sentence when the commutation was revoked by the Governor in 1974. See Doyle v. Hampton, 207 Tenn. 399, 340 S.W.2d 891 (1960). Therefore, the defendant is not entitled to habeas corpus relief.

## CONCLUSION

We have determined that the commuted sentence of 22 years to life was a proper exercise of the Governor's constitutional authority, and that the defendant was still serving this sentence when the commutation was revoked by

the Governor in 1974. Accordingly, the defendant was not entitled to habeas corpus relief, and the judgment of the Court of Criminal Appeals is affirmed.

Costs of this appeal are taxed to the appellant, for which execution may issue if necessary.

_____
E. RILEY ANDERSON, CHIEF JUSTICE

**Concur:**

Drowota, Reid, Birch, and Holder, JJ.