# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

June 29, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

JAMES A. LEMAY                    )
                                  )
    Petitioner/Appellant,        )
                                  )    Appeal No.
                                  )    01-A-01-9807-CH-00397
VS.                               )
                                  )    Davidson Chancery
                                  )    No. 96-3076-II
STATE OF TENNESSEE,               )
DEPARTMENT OF CORRECTION,         )
                                  )
    Respondent/Appellant.        )


APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE CAROL L. MCCOY, CHANCELLOR


ROBERT J. MENDES
St. Cloud Corner, Suite 575
500 Church Street
Nashville, Tennessee 37219
    Attorney for Petitioner/Appellee

JOHN KNOX WALKUP
Attorney General and Reporter

JOHN R. MILES
c/o Attorney General and Reporter
425 Fifth Avenue North
Nashville, Tennessee 37243-0488
    Attorney for Respondent/Appellant


REVERSED AND REMANDED


BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
CAIN, J.
WOODALL, J.

# O P I N I O N

The question we must decide is whether a conditional commutation of a prison sentence may be revoked at any time during the original sentence, or can it only be revoked during the commuted sentence? The Chancery Court of Davidson County entered a declaratory judgment that an attempted revocation after the expiration of the commuted sentence was void. We reverse.

## I.

The facts of this case are fairly simple, although Mr. Lemay has had a colorful career in the Tennessee prison system. In 1969 he received a ninety-nine year prison sentence in Lewis County for first degree murder. In the scandal-tinged last days of the Blanton administration, Governor Blanton conditionally commuted Mr. Lemay's sentence to thirty years. Governor Alexander temporarily held up the commutation issued by Governor Blanton, but, apparently convinced that Mr. Lemay's case was legitimate, Governor Alexander issued his own conditional commutation in February of 1979. His commutation was identical to Governor Blanton's; each contained the following conditions:

> This commutation is granted conditioned that the aforesaid prisoner obey all the rules and regulations of the authority having custody of him, lead the life of a good citizen, obey all the laws of the Nation, States, and Municipalities and shall not be guilty of other conduct, in the opinion of the Governor, improper and illegal. In the event any of the foregoing conditions are violated, the Governor, at his option (or on the recommendation of the State Board of Pardons, Paroles and Probation) may issue a warrant for the arrest and return of said prisoner to the Warden of the State Penitentiary to undergo remainder of said original or commuted sentence, as determined by the Governor. The Governor shall be sole judge as to whether or not any of the aforesaid conditions have been violated, and there shall be no review of his action thereon by any Court whatsoever.

Almost simultaneously, Mr. Lemay, while on work release and employed by the state comptroller's office, transferred $20,000 from the state treasury to a private bank account. Then in May of 1979 he escaped from custody.

Mr. Lemay remained free until December of 1979. In May of 1980 he was sentenced to three years of additional time on each of five counts of obtaining property under false pretenses. He also got another year for escape. In November of 1980 Governor Alexander revoked Mr. Lemay's commutation.

In June of 1996 Mr. Lemay asked the Department of Correction for a declaratory order that he was entitled to immediate release. He argued that Governor Blanton's original commutation was still in effect, and that with all the sentence credits to which he was entitled, the thirty year commuted sentence had long since expired.

The Department refused to issue a declaratory order and Mr. Lemay filed a petition for a declaratory judgment in the Chancery Court of Davidson County. *See* Tenn. Code Ann. § 4-5-224. In an interlocutory order, the chancellor held that Governor Alexander's revocation in November of 1980 only revoked his own commutation and not Governor Blanton's. Therefore the sentence still stood as commuted to thirty years. Apparently this order prompted Governor Sundquist in December of 1997 to issue his own order specifically revoking the Blanton commutation.

The proof in the record showed that with all credits a commuted thirty year sentence expired on January 16, 1986. This brings us to the ultimate question in this case: Is a revocation within the term of the original sentence effective after the expiration of a commuted sentence? The chancellor in her final order held that our Supreme Court had ruled that a revocation of a commuted sentence must take place before the commuted sentence expires. *See Carroll v. Raney*, 953 S.W.2d 657 (Tenn. 1997). Therefore, the chancellor held that Governor Sundquist's revocation came too late, and that Mr. Lemay was being illegally held.

**II.**

- 3 -

The Governor's power to grant "reprieves and pardons" has been well recognized in many appellate court decisions. *See Carroll v. Raney*, 953 S.W.2d 657 (Tenn. 1997); *Ricks v. State*, 882 S.W.2d 387 (Tenn. Cr. App. 1994); *White v. State*, 717 S.W.2d 309 (Tenn. Cr. App. 1986). It will suffice to say here that the power encompasses the right to commute a sentence, *Ricks v. State,* 882 S.W.2d 387 (Tenn. Cr. App. 1994) and to attach conditions or restrictions to a commuted sentence "that are reasonable, legal, and possible for the defendant to perform." *Carroll v. Raney*, 953 S.W.2d at 660. The conditions "must appear on the face of the paper, and must be clear and specific." *Id.* If the prisoner violates the conditions, the commutation may be revoked. *White v. State*, 717 S.W.2d 309 (Tenn. Cr. App. 1986).

Mr. Lemay argues that Governor Blanton's commutation was unconditional because the conditions were on the back of the form, and because the conditions were not clear and specific. We reject both arguments. The conditions appear on the form just above the commutation language itself and on the same page containing the Governor's signature. In order to get to the commutation one must pass over the conditions. Therefore, the conditions are on the face of the sheet. They are also identical to the conditions imposed on Mr. White, which the court approved in *White v. State*, 717 S.W.2d 309 (Tenn. Cr. App. 1986).

Passing on to the real question, we think the answer lies in understanding the nature of the Governor's power. It is clear that the Governor's power to grant reprieves and pardons is limited only by the language in the constitution. *Carroll v. Raney,* 953 S.W.2d 657 (Tenn. 1997). In granting a pardon the Governor has the right to place conditions on the grant. *State ex rel. Bedford v. McCorkle*, 40 S.W.2d 1015 (Tenn. 1931). When the prisoner accepts the pardon he accepts it subject to all of its terms and conditions. *State ex rel. Rowe v. Connors*, 61

- 4 -

S.W.2d 471 (Tenn. 1933). The conditions are conditions subsequent, making the pardon null and void if the conditions are violated. 59 Am.Jur.2d *Pardon and Parole* § 2.

When a prisoner receives a pardon, there is no longer any sentence to be served. Yet, no one seriously questions the power of the Governor to revoke the pardon when the prisoner violates the conditions. We conclude, therefore, that a sentence remaining to be served does not have any bearing on the Governor's power of revocation.

As we have noted the Governor's power to commute a sentence is derived from the power to issue "reprieves and pardons." TENN CONST. art. III, § 6; *Ricks v. State*, 882 S.W.2d 387 (Tenn. Cr. App. 1994). Therefore, the power is as complete and unfettered in this area as in the case of pardons. We think it must follow that the Governor may revoke a commuted sentence at any time before the original sentence expires.

The only case directly on point so held. In *White v. State*, 717 S.W.2d 309 (Tenn. Cr. App. 1986), the prisoner's original ninety-nine year sentence was commuted to "time served" on the condition that Mr. White "obey all rules . . .", etc. When Mr. White subsequently committed other crimes, the governor revoked the commutation, and the Court of Criminal Appeals held that the governor's power to revoke the commutation lasted until the ninety-nine year sentence expired.

Mr. White relied (as Mr. Lemay does) on *Rowell v. Dutton*, 688 S.W.2d 474 (Tenn. Cr. App. 1985) in which an original sentence of twenty years imposed in 1974 was later commuted to ten to twenty years. In 1983 Mr. Rowell was convicted of other crimes and the parole board recommended that the governor revoke the commutation. The governor signed the revocation on November 22, 1983, but the

court found that the original twenty year sentence (when given all the available credits) expired on November 15, 1983. Since the original sentence had expired, the court held that the governor no longer had the power to recommit the prisoner by revoking the commutation. As the *White* court recognized, *Rowell* dealt with an expired original sentence not an expired commuted sentence. A commuted sentence with conditions attached may be revoked at any time during the original sentence. Otherwise, in *White* when the original sentence was commuted to time served, the conditions would have been meaningless and the prisoner would have been free of any restraints.

Mr. Lemay also relies on a sentence in the recent Supreme Court case of *Carroll v. Raney*, 953 S.W.2d 657 (Tenn. 1997). The Court said, "Upon a finding that a condition has been violated, the commuted sentence may be revoked by the Governor, provided that the sentence has not expired." 953 S.W.2d at 660. If we were to parse the sentence in isolation, we might conclude that the second use of the word "sentence" referred back to "commuted sentence" used earlier. But, the Court cites *Rowell v. Dutton*, 688 S.W.2d 474 (Tenn. Cr. App. 1985) for the statement, and we have already noted that the "sentence" that had expired in *Rowell* was the original sentence. We do not think the Supreme Court intended to make a major pronouncement on the governor's pardoning power in such an off-hand way.

The judgment of the trial court is reversed and the cause is remanded for any further proceedings necessary. Tax the costs on appeal to the appellee.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:

_____
WILLIAM B. CAIN, JUDGE

- 7 -

_____
THOMAS T. WOODALL, JUDGE
SITTING BY DESIGNATION