IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
May 26, 2000 Session

# JAMES A. LEMAY v. STATE OF TENNESSEE, DEPARTMENT OF CORRECTION

**Appeal by Permission from the Court of Appeals, Middle Section**
**Chancery Court for Davidson County**
**No. 96-3076-II     Carol L. McCoy, Chancellor**

_____

**No. M1998-00317-SC-R11-CV - Filed October 5, 2000**

_____

We granted this appeal to determine whether the Governor has the authority to revoke a conditional commutation during the term of the commuted sentence only, or whether the commutation may be revoked during the term of the original sentence. We conclude that the Governor has the authority to revoke a conditional commutation during the term of the original sentence. We therefore hold that the Governor's revocation of the prisoner's commutation after the expiration of the commuted sentence but before the expiration of the original sentence was valid, and affirm the judgment of the Court of Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed.**

E. RILEY ANDERSON, C. J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Robert J. Mendes, Nashville, Tennessee, for the appellant, James A. LeMay.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; and Gordon W. Smith, Associate Solicitor General, for the appellee, State of Tennessee, Department of Correction.

**OPINION**

## Background

In 1969, James A. LeMay was convicted of first degree murder in the Circuit Court for Lewis County and received a ninety-nine-year prison sentence. On January 15, 1979, Governor Ray Blanton signed a commutation reducing the sentence to thirty years. However, on January 22, 1979, the commutation was physically withdrawn from LeMay's Department of Correction file and returned to the office of newly-inaugurated Governor Lamar Alexander. On February 21, 1979, Governor Alexander issued a similar commutation for LeMay. Both Governor Blanton's and Governor Alexander's commutation contained the following language:

> This commutation is granted conditioned that the aforesaid prisoner obey all the rules and regulations of the authority having custody of him, lead the life of a good citizen, obey all the laws of the Nation, States, and Municipalities and shall not be guilty of other conduct, in the opinion of the Governor, improper and illegal. In the event any of the foregoing conditions are violated, the Governor, at his option (or on the recommendation of the State Board of Pardons, Paroles and Probation) may issue a warrant for the arrest and return of said prisoner to the Warden of the State Penitentiary to undergo [the] remainder of said original or commuted sentence, as determined by the Governor. The Governor shall be sole judge as to whether or not any of the aforesaid conditions have been violated, and there shall be no review of his action thereon by any Court whatsoever.

While on work release and employed by the state comptroller's office, LeMay participated in a scheme whereby $20,000 was transferred from the state treasury to a local bank account for his personal use. In May 1979, LeMay escaped from custody while on work release.

LeMay was returned to custody on December 5, 1979 and, after pleading guilty, was sentenced to five concurrent three-year sentences for obtaining property under false pretenses and to a one-year sentence for escape. All of the convictions were ordered to run consecutive to the sentence for the murder conviction. On November 24, 1980, Governor Alexander revoked LeMay's February 21, 1979 commutation.

In May 1996, LeMay petitioned the Department of Correction for a declaratory order that he was entitled to immediate release. He asserted that Governor Blanton's commutation was never revoked and that the thirty-year commuted sentence had expired. The Department refused to issue a declaratory order.

On October 2, 1996, LeMay filed a petition for declaratory judgment in the Chancery Court for Davidson County. In an interlocutory order, the trial court held that Governor Alexander's revocation in November 1980 served only to revoke his own commutation and not the commutation issued by Governor Blanton. The commuted sentence of thirty years issued by Governor Blanton was still in effect. Apparently this order prompted Governor Don Sundquist to issue his own order revoking the Blanton commutation on December 15, 1997.

The record reflects that after applying all applicable sentencing credits, the commuted thirty-year sentence and the three-year sentence for the additional crimes would have expired on January 16, 1986. The original sentence of ninety-nine years would not expire until May 22, 2014.

The chancery court entered a declaratory judgment finding that the attempted revocation by Governor Sundquist occurring after the expiration of the commuted sentence was void. The Court of Appeals reversed the judgment, holding that a conditional commutation of a prison sentence may be revoked at any time during the original sentence. We granted LeMay's application for permission to appeal to resolve the issue of when a conditional commutation may be revoked.

## Analysis

In order to resolve the ultimate question of when a conditional commutation may be revoked, we first examine the Governor's authority to commute sentences.

Article III, Section 6 of the Tennessee Constitution provides that the Governor "shall have the power to grant reprieves and pardons, after conviction, except in cases of impeachment." See also Tenn. Code Ann. § 40-27-101 (1997). The constitutional power to grant reprieves and pardons includes the right to commute a sentence, i.e., impose a lessor or shorter sentence from the sentence imposed following the prisoner's conviction. Carroll v. Raney, 953 S.W.2d 657, 659 (Tenn. 1997); Bowen v. State, 488 S.W.2d 373, 375-76 (Tenn. 1972). In effect, the commuted sentence replaces the sentence imposed by the original judgment. Carroll, 953 S.W.2d at 659; Bowen, 488 S.W.2d at 375-76.

The Governor's authority to commute a sentence is limited only by the language of the Constitution and neither the legislature nor the courts may regulate or control the Governor's power to commute a sentence. Carroll, 953 S.W.2d at 659-60 (citing State ex rel. Bedford v. McCorkle, 163 Tenn. 101, 40 S.W.2d 1015, 1016 (1931)); State ex rel. Rowe v. Connors, 166 Tenn. 393, 61 S.W.2d 471, 472 (1933); Ricks v. State, 882 S.W.2d 387, 391 (Tenn. Crim. App. 1994). Moreover, the Governor has the authority to attach conditions or restrictions to a commuted sentence that are reasonable, legal, and possible for the prisoner to perform. Carroll, 953 S.W.2d at 660. The Governor has the concomitant power to revoke a commuted sentence upon a finding that a condition has been violated. Id.

In this case, LeMay's thirty-year commuted sentence and the consecutive three-year sentence expired on January 16, 1986. Governor Sundquist's revocation of commutation was issued after that

date, but before the expiration of the term of the original ninety-nine-year sentence. Accordingly, the issue presented in this case is whether the Governor has the authority to revoke a commutation within the term of the original sentence, but after the expiration of the commuted sentence.

To determine this issue, we look next to existing case law in Tennessee. In White v. State, 717 S.W.2d 309 (Tenn. Crim. App. 1986), our intermediate court addressed a factual situation very similar to this case. In that case, White's original ninety-nine-year sentence was commuted by the Governor to "time served." Id. The commutation language contained conditions similar to LeMay's. Id. at 310. White was later convicted of another crime, and the Governor revoked the commutation before the end of the original ninety-nine-year sentence. Id. at 309. White argued that the revocation was invalid because the Governor could not revoke the commutation after expiration of the commuted sentence, reasoning that the commuted sentence was substituted for the original sentence and was the sentence that was actually in existence. Id. at 310. The Court of Criminal Appeals rejected this argument, holding that the Governor's power to revoke does not end until expiration of the original sentence. Id.

Thus, when presented with the precise factual situation involved in this case, the Court of Criminal Appeals has held that the Governor's power to commute extends through the term of the original sentence. See White v. State, 717 S.W.2d at 310. The Court of Criminal Appeals has never held that the Governor's power to commute expires at the end of the term of the commuted sentence. Cf. Rowell v. Dutton, 688 S.W.2d 474 (Tenn. Crim. App. 1985) (no authority to revoke commuted sentence after the expiration of the original sentence).

Despite this intermediate court decision, LeMay argues first that because the commuted sentence is substituted for the original sentence, it is the only one in existence and the only one to be considered. LeMay also contends that the Governor could extend the application of a condition beyond the term of the commuted sentence, so long as the commutation clearly indicated that intent. He asserts that the commutation in this case does not contain such language, and the conditions could not be enforced against him.

Similarly, LeMay also relies upon a sentence from our decision in Carroll v. Raney, in which the prisoner had received a commutation commuting his sentence from life to "22 years to life." 953 S.W.2d at 659. We specifically found that the commutation at issue did not contain an express condition, yet held that the Governor had the authority to revoke the commutation during the prisoner's life because the original sentence had not expired, since its maximum term was life. Id. at 660-61. We remarked that "[u]pon a finding that a condition has been violated, the commuted sentence may be revoked by the Governor, provided that the sentence has not expired." Id. at 660 (citing Rowell v. Dutton, 688 S.W.2d at 477).

We conclude that LeMay's arguments and his reliance on our decision in Carroll are misplaced. To the extent that the language in Carroll is ambiguous, our citation to Rowell, where the original sentence had expired, supports our conclusion that the Governor retains the authority to revoke a commutation during the term of the original sentence. Rowell, 688 S.W.2d at 477.

In addition, we conclude that the commutation contains language specifically authorizing the Governor to reinstate the original sentence if LeMay violated the conditions of the commutation. The commutation states that if "any of the foregoing conditions are violated, the Governor . . . may issue a warrant for the arrest and return of [LeMay] to the Warden of the State Penitentiary to undergo [the] remainder of said original or commuted sentence as determined by the Governor." When this language is construed in accordance with the constitutional authority provided solely to the Governor to grant reprieves and pardons, it follows that the Governor possesses the authority to revoke the commutation after the expiration of the commuted sentence, but before expiration of the original sentence.

Finally, we hold that the Governor's authority to revoke a conditional commutation remains in effect during the term of the original sentence. If the Governor had no authority to revoke a conditional commutation after expiration of the commuted sentence, then in many instances the conditions imposed would be meaningless. For instance, when the Governor grants a conditional commutation to "time served" no portion of the commuted sentence remains for the prisoner to serve. Therefore, unless the Governor retains the power to revoke during the term of the original sentence, the conditions are in effect meaningless.

## Conclusion

We conclude that LeMay breached the conditions of his commutation when he committed the felonies of obtaining property under false pretenses and escape. The conditional commutation was subject to revocation up to the expiration of the original ninety-nine-year sentence. Since LeMay's ninety-nine-year sentence had not expired at the time of Governor Sundquist's revocation on December 15, 1997, the revocation was valid. The judgment of the Court of Appeals is affirmed. Costs are assessed against the appellant, James A. LeMay.

_____
E. RILEY ANDERSON, CHIEF JUSTICE