# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs December 11, 2001

## DANIEL B. TAYLOR v. DONAL CAMPBELL, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 99-948-I    Irvin H. Kilcrease, Jr., Chancellor**

---

**No. M2001-00479-COA-R3-CV - Filed October 1, 2003**

---

This appeal involves a dispute between a prisoner and the Department of Correction regarding the prisoner's sentence credits. After his request for a declaratory order was denied, the prisoner filed suit in the Chancery Court for Davidson County against the Commissioner of Correction and others seeking a declaration that the Department had miscalculated his sentence and had erroneously refused to classify him as a Range I especially mitigated offender. The trial court granted the Department's motion for summary judgment and dismissed the petition. We concur with the trial court's conclusion that the Department is entitled to a judgment as a matter of law and, accordingly, affirm the summary judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Daniel B. Taylor, Only, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Kimberly J. Dean, Deputy Attorney General, for the appellees, Donal Campbell, Commissioner, Tennessee Department of Correction, Williams Keeling, Roland Colson, Faye Cloud, Dinna Wilson, Wyema Helms, and Shirley Pluckett.

## OPINION

### I.

In the fall of 1980, Daniel B. Taylor shot an unarmed man with a rifle for "messing in his business." *State v. Taylor*, 668 S.W.2d 681, 683 (Tenn. Crim. App. 1984) (internal quotes omitted). A Shelby County jury found him guilty of second degree murder and sentenced him to life in prison. Mr. Taylor's direct appeal and subsequent petitions for post-conviction relief and for a writ of habeas

corpus proved unsuccessful.[1] He is currently incarcerated at the Turney Center Industrial Prison and Farm in Only, Tennessee.

For the past decade, Mr. Taylor, who views himself as a "reknown [sic] pro se litigant," has filed numerous unsuccessful lawsuits challenging his sentence and seeking damages from his court-appointed attorneys and the judges who have denied his petitions.[2] This appeal arises out of a petition Mr. Taylor filed with the Department of Correction for a declaratory order regarding the proper calculation of his sentence. The Department reviewed Taylor's sentence, concluded that the current sentence structure was valid and correct, and sent Mr. Taylor a letter dated March 3, 1999 denying his petition. A month later, Mr. Taylor filed a petition for a declaratory judgment in the Chancery Court for Davidson County asserting that the Department had miscalculated his sentence, and that his sentence for second degree murder was illegal and void.

This case has already been to us once before. The trial court initially dismissed Mr. Taylor's petition on the ground that he had failed to exhaust his administrative remedies. Mr. Taylor appealed, and this Court vacated the judgment dismissing the petition and remanded the case for further proceedings. *Taylor v. Campbell*, No. M2000-00217-COA-R3-CV, 2000 WL 1050787 (Tenn. Ct. App. July 31, 2000) (No Tenn. R. App. P. 11 application filed). On remand, the trial court determined that Mr. Taylor had failed to demonstrate: (1) that the Department of Correction had miscalculated his sentence; and (2) that the petition to the trial court provided a proper procedural vehicle for a collateral attack on the legality of his 1982 sentence for second degree murder. The trial court held that the Department was entitled to judgment as a matter of law and granted its summary judgment motion. Mr. Taylor appealed the summary judgment.

## II.
### THE STANDARD OF REVIEW

The trial court disposed of this case by summary judgment under Tenn. R. Civ. P. 56. The standards for reviewing summary judgments on appeal are well settled. A summary judgment may be used to conclude any civil case that can and should be resolved on the basis of legal issues alone.

---

[1]*State v. Taylor*, 668 S.W.2d 681, 682 (Tenn. Crim. App. 1984) (direct appeal); *Taylor v. State*, No. 02C01-9703-CR-00091, 1998 WL 119506, at *1 (Tenn. Crim. App. Mar. 18, 1998), *perm. app. denied* (Tenn. Dec. 14, 1998) (post-conviction action); *Taylor v. Morgan*, No. M1999-01416-CCA-R3-PC, 2000 WL 1278373, at *1 (Tenn. Crim. App. Aug. 31, 2000), *perm. app. denied* (Tenn. Mar. 12, 2001) (habeas corpus).

[2]*See, e.g., Taylor v. Neil*, No. 01A01-9211-CH-00439, 1993 WL 73905 (Tenn. Ct. App. Mar. 17, 1993), *perm. app. denied* (Tenn. Aug. 2, 1993) (unsuccessful suit seeking access to Judiciary Department's Annual Report); *Taylor v. State*, No. 02A01-9508-BC-00229, 1996 WL 367782 (Tenn. Ct. App. July 3, 1996) (No Tenn. R. App. P. 11 application filed) (unsuccessful suit for damages against State for alleged legal malpractice by court-appointed lawyer); *Taylor v. State*, No. 01A01-9707-CH-00338, 1999 WL 58599 (Tenn. Ct. App. Feb. 9, 1999), *perm. app. dismissed* (Tenn. Oct. 11, 1999) (unsuccessful suit challenging retroactive application of statute disenfranchising convicted felons); *Taylor v. Heldman*, No. M1999-00729-COA-R3-CV, 2000 WL 1367960 (Tenn. Ct. App. Sept. 22, 2000), *perm. app. denied* (Tenn. Sept. 16, 2002) (unsuccessful suit for damages against trial judges who denied his petition for writ of habeas corpus); *Taylor v. State*, No. W2000-01467-COA-MR3-CV, 2001 WL 873470 (Tenn. Ct. App. July 31, 2001), *perm. app. dismissed* (Tenn. Dec. 14, 2001) (unsuccessful suit for damages against the State, 2 judges, 3 prosecutors, and 1 public defender).

*Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001). A summary judgment is not appropriate, however, where there are genuine disputes regarding facts that are material to the case. Tenn. R. Civ. P. 56.04. Thus, a summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from them, support one conclusion: that the party seeking the summary judgment is entitled to judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001).

The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998). To be entitled to a judgment as a matter of law, the moving party must either affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Byrd v. Hall*, 847 S.W.2d at 215 n.5; *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

Once the moving party has made a properly supported motion, the burden shifts to the non-moving party to set forth specific facts establishing the existence of disputed, material facts that must be resolved by the trier of fact. Tenn. R. Civ. P. 56; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Mere conclusory generalizations are insufficient to place a material fact in controversy. *Cawood v. Davis*, 680 S.W.2d 795, 796-97 (Tenn. Ct. App. 1984). The non-moving party must convince the trial court that there are sufficient factual disputes to warrant a trial: (1) by pointing to evidence either overlooked or ignored by the moving party that creates a factual dispute; (2) by rehabilitating evidence challenged by the moving party; (3) by producing additional evidence that creates a material factual dispute; or (4) by submitting an affidavit in accordance with Tenn. R. Civ. P. 56.07 requesting additional time for discovery. *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d at 215 n.6. A non-moving party that fails to carry its burden faces summary dismissal of the challenged claim because, as our courts have repeatedly observed, the "failure of proof concerning an essential element of the cause of action necessarily renders all other facts immaterial." *Alexander v. Memphis Individual Practice Ass'n*, 870 S.W.2d 278, 280 (Tenn. 1993).

Summary judgments enjoy no presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001). Appellate courts must freshly determine whether the moving party has met its requirements under Tenn. R. Civ. P. 56. *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all reasonable inferences in the non-moving party's favor. *Godfrey v. Ruiz*, 90 S.W.3d at 695; *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001). When reviewing the evidence, we must first determine whether any factual disputes exist. If a factual dispute exists, we must then determine two things: (1) whether the fact at issue is material to the claims or defenses that form the basis of the summary judgment motion; and (2) whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d at 214; *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

## III.
### MR. TAYLOR'S SENTENCE CREDIT CLAIMS

Mr. Taylor first asserts that the Department miscalculated his sentence because it wrongfully denied him various types of sentence reduction credits to which he was legally entitled. These claims do not involve calculation errors but instead rest on Mr. Taylor's disagreement with the Department regarding the proper interpretation of the applicable statutes. Accordingly, this dispute raises only legal issues, and the Department is entitled to a summary judgment unless Mr. Taylor can demonstrate a legal basis for the sentence credits he is seeking. *Mauldin v. Tenn. Dep't of Corr.*, No. 01A01-9801-CH-00014, 1999 WL 5084, at *4 (Tenn. Ct. App. Jan. 7, 1999), *perm. app. denied* (Tenn. June 21, 1999).

### A.

For quite some time now, state prisoners in Tennessee have been able to reduce the length of their incarceration through the use of "sentence credits,"which the prisoners must earn. The programs governing the availability of these credits have changed over the years, *Jones v. Reynolds*, No. 01A01-9510-CH-00484, 1997 WL 367661, at *3-4 (Tenn. Ct. App. July 2, 1997) (No Tenn. R. App. P. 11 application filed) (discussing different types of sentence reduction credits), and we need not describe these programs in great detail in this opinion. Mr. Taylor insists only that he was entitled to earn prisoner performance sentence credits, good conduct credits, and incentive credits. He is mistaken. Mr. Taylor was never eligible to earn such credits because he is a Class X felon, and Class X felons serving life sentences are not allowed to earn such credits.

The Class X Felonies Act of 1979 (the "Act"), was designed to provide swift and certain punishment for those who commit the most serious violent crimes. *Davis v. Campbell*, 48 S.W.3d 741, 746 (Tenn. Ct. App. 2001). The Act required determinate sentences and speedier trials. The Act provided that persons convicted of Class X crimes who received life sentences would be required to serve 30 years before becoming eligible for release,[3] and that the 30-year sentence would be "undiminished by sentence credits or good, honor or incentive time of any sort."[4] To make the point crystal clear, the Act provided further that Class X felons were "ineligible for work release, trustyship status, furlough of any sort, educational or recreational release or any other program whereby the prisoner's term of imprisonment may be reduced." Tenn. Code Ann. § 40-28-301(a), (f).

Before July 1, 1983, Class X felons, including Mr. Taylor, were not able to earn sentence reductions of any sort, and their sentences were not terminated until after service of each and every day of the sentence imposed.[5] In 1983, the General Assembly amended the Act to permit certain Class X felons to earn prisoner performance sentence credits to reduce their sentence expiration dates, but not their release eligibility dates. The new law stated in pertinent part as follows:

---

[3]Tenn. Code Ann. § 40-28-301(f) (1982) (repealed 1985).

[4]Tenn. Code Ann. § 40-28-301(d) (1982) (repealed 1985).

[5]Tenn. Code Ann. § 39-1-703(2) (1982) (Repealed 1989).

Notwithstanding the provisions of this chapter to the contrary, a person convicted of a Class X felony shall be eligible to receive prisoner performance sentence credits as provided in Tenn. Code Ann. § 41-21-230 to reduce the *expiration date* of such person's sentence. The provisions of this subsection shall not affect the *release classification eligibility date* of Class X offenders.

Tenn. Code Ann. § 40-28-301(1) (Supp. 1983) (repealed 1985) (emphasis added).

Unfortunately for Mr. Taylor, an expiration date "reduc[tion]" is of no use to criminals serving life sentences. By definition, a life sentence expires on the same day the prisoner does. It would be impossible to "reduce" the length of such a sentence until it was already completed, because until then, the expiration date would be unknown and unknowable. *Carroll v. Raney*, 953 S.W.2d 657, 661 (Tenn. 1997) (stating life sentence does not expire until death); *Blackmon v. Morgan*, No. 01C01-9512-CR-00437, 1997 WL 110017, at *2 (Tenn. Crim. App. Mar. 13, 1997), *perm. app. denied* (Tenn. Oct. 27, 1997). Needless to say, it would also be pointless to attempt to "reduce" the length of a life sentence that has already been completed, because at that point, the prisoner has already died.

In 1985, the General Assembly again amended the sentence credit statutes. These amendments permitted Class X felons to earn prisoner sentence reduction credits to reduce their sentence expiration dates and their release eligibility dates. However, prisoners were required to sign a written waiver to become eligible to earn these credits and were entitled to begin earning these prisoner sentence reduction credits prospectively from December 11, 1985. Tenn. Code Ann. § 41-21-236(c)(3) (1997); *Davis v. Campbell*, 48 S.W.3d at 746; *Brown v. Tenn. Dep't of Corr.*, No. M1999-02519-COA-R3-CV, 2001 WL 177059, at *2 (Tenn. Ct. App. Feb. 23, 2001), *perm. app. denied* (Tenn. June 11, 2001).

Before the establishment of the prisoner sentence reduction credit program, Class X felons serving a life sentence like Mr. Taylor could not earn sentence credits of any sort. After March 1, 1986, the effective date of the Tennessee Comprehensive Correction Improvement Act of 1985, these felons became eligible to earn prisoner sentence reduction credits prospectively, but nothing else.[6] As a matter of well-settled law, the trial court correctly ruled against Mr. Taylor's claim that he was due prisoner performance sentence credits, good conduct credits, or incentive time credits. He was never eligible for them.

**B.**

Mr. Taylor also asserts that he is entitled to additional sentence credits for the time he spent incarcerated in the Shelby County jail before being transferred to a state institution. Mr. Taylor was confined to the Shelby County jail from December 22, 1981 through April 11, 1984. During this time, Mr. Taylor was both convicted and sentenced. The sentencing took place on January 20, 1983,

---

[6]Mr. Taylor does not take issue with the Department's actual calculation of his sentence reduction credits.

and Mr. Taylor remained at the Shelby County jail for approximately three months thereafter before his transfer to a state institution.

Mr. Taylor and the Department are in agreement that the effective date of his sentence is December 22, 1981. Accordingly, pursuant to Tenn. Code Ann. § 40-23-101 (1997), Mr. Taylor was entitled to pretrial jail credit for every day he spent in the Shelby County jail from December 22, 1981 – the effective date of his sentence – to January 20, 1983 – the date the sentencing decision was actually handed down by the trial court. Mr. Taylor acknowledges that the Department properly credited him with 394 days for this time.

Mr. Taylor was not, however, given pretrial jail credit for the time he was incarcerated in the Shelby County jail following his sentencing. The days he spent in the Shelby County jail beginning January 20, 1983, have been credited to him not as pretrial jail credit but rather as straight time served. Contrary to Mr. Taylor's assertions, the Department has calculated his pretrial jail credits correctly and appropriately gave him the credit for the time he remained in the Shelby County jail following his sentencing.

Mr. Taylor seeks additional good behavior and incentive jail credits, perhaps under Tenn. Code Ann. § 41-21-236(e).[7] Mr. Taylor did not qualify for these types of credits. Until its repeal in 1989, Tenn. Code Ann. § 39-1-703(2) expressly prohibited Class X felons from earning sentence credits of any kind, including sentence credits based on behavior earned in a jail or workhouse. Furthermore, Tenn. Code Ann. § 41-21-236(e) (1997), the statute authorizing pretrial behavioral credits, was not enacted until 1989, long after Mr. Taylor put in his pretrial jail time.

## IV.
### MR. TAYLOR'S CHALLENGE TO HIS LIFE SENTENCE

Finally, Mr. Taylor asserts that his life sentence is void and that he has the right to be sentenced, in his words, "as a Range I, especially mitigated offender, at twenty percent with an additional ten percent reduction." He claims that the Department has the power, by virtue of its alleged authority to "audit" sentences, to substitute a lesser sentence for Mr. Taylor's existing Class X felony life sentence. As support, Mr. Taylor relies on a departmental training manual directing that new prisoners be "audited" the first day they arrive at the prison. Mr. Taylor's argument on this point overstates the Department's power and mischaracterizes the nature of the "audits" performed by the Department.

The Department has no power to change any prisoner's criminal sentence under the guise of "auditing" it for correctness. *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978); *Williams v. Tenn. Dep't of Corr.*, No. 01A01-9801-CH-00010, 1999 WL 22359, at *2 (Tenn. Ct. App. Jan. 21, 1999), *perm. app. denied* (Tenn. May 10, 1999). The intake "audits" referred to by Mr. Taylor simply ensure that each new inmate's paperwork is in order, and that the prison has the correct records relating to each prisoner's sentence. This is a far cry from a procedure that would invest in

---

[7]Mr. Taylor fails to give any code citations referencing the additional credits he requests. His petition characterizes these credits as "basically a longevity credit."

the Department the power to review, set aside, or alter criminal sentences as established by the trial courts. Nothing in the training manual authorizes – or could authorize – the Department to usurp the trial court's authority by setting aside or altering a sentence and replacing it with some other sentence more to the Department's liking. At most, the Department could call to the trial court's attention any clerical or other errors that the Department believes it has found in the trial court's sentencing judgment. The Department has no power beyond that. Accordingly, Mr. Taylor's complaint on this issue utterly fails to state any legal claim for which relief can be granted.

## V.

We affirm the dismissal of Mr. Taylor's petition and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Daniel B. Taylor for which execution, if necessary, may issue. We have also determined that this appeal is frivolous in accordance with Tenn. Code Ann. §§ 41-21-807(c) (Supp.2002) and 41-21- 816(a)(1) (1997).

_____
WILLIAM C. KOCH, JR., J.